HEYMAN A. SMITH *vs.* LUZERENE A. BROCKETT.

Third Judicial District, New Haven, June Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In an action of replevin the defendant pleaded the general issue, with no-
tice that the goods were attached by him as the property of one *H*, to
whom they belonged. *Held* that under this issue the defendant might
show that the plaintiff's title was the direct outgrowth of a fraudulent
conspiracy to cheat the creditors of *H*.

A notice filed with the general issue is to be liberally construed in favor of
the pleader.

The plaintiff, a resident of New York and a stranger to *H*, who was a
retail shoe dealer in Boston, testified that he bought out the latter and
shipped the entire stock to *D* & *R*, auctioneers in New York, one of
whom—his brother-in-law—had called his attention to the goods and
accompanied him to Boston to examine them. During their transit
through this State the defendant attached the goods as still the prop-
erty of *H*, and the plaintiff replevied them. Upon his cross-examination
the plaintiff was asked if he knew that his agents, *D* & *R*, were in the
business of buying bankrupts' stocks for the purpose of cheating their
creditors. *Held* that it was error to exclude the question, since an

affirmative answer might have tended to show that, if the sale in question was fraudulent, the plaintiff participated in the fraud.

*D* testified in behalf of the plaintiff, and was asked on cross-examination if he had not been recently examined in insolvency in New York. *Held* that the question was properly excluded, as the witness could not be discredited in that way.

The same witness was also asked if his firm had bought other stocks of goods and whether they were the agents of the plaintiff for buying any other stocks in Boston. *Held* that these inquiries should have been allowed, as the answers thereto might have had some tendency to discredit the witness' statement that the sale was made to the plaintiff, and also to show the conspiracy relied on in defense.

A copy of the record of a court of another State is not admissible, unless certified by the judge, as required by § 905 of the Revised Statutes of the United States.

It is the right of every State to determine for itself how fully judicial proceedings in its courts shall be recorded. In Massachusetts the docket entries of judicial proceedings in her insolvency courts are records, and a duly certified transcript of them constitutes the proper proof, in this State, that such proceedings have been had.

The fact that *H*, four months after the alleged sale to the plaintiff, occupied the *status* of an insolvent debtor under the laws of Massachusetts and before its courts, was a fact relevant to the defense set up, and the transcript of the record to that effect, offered by the defendant, should have been received.

Declarations of one conspirator as to past transactions, whether made in a court of justice or elsewhere, are still hearsay, and inadmissible against a co-conspirator.

[Argued June 3d—decided July 13th, 1897.]

ACTION of replevin to recover the possession of a stock of boots and shoes, brought to the Superior Court in New Haven County and tried to the court, *Thayer, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *Error, and new trial ordered.*

The finding stated the following facts:—Upon the 21st day of February, 1895, the goods replevied were the property of Lewis Harris, of Boston, Massachusetts, who was then engaged in the retail shoe business in East Boston, and constituted his entire stock in trade. On that day he sold and delivered them to the plaintiff, for $1,450, which the latter then paid to him. Within a few days the goods were by the plaintiff shipped by rail to Doblin & Rosenthal, auc-

tioneers, at 225 East 42d street, New York, and while in transit through New Haven were attached by the defendant as a deputy sheriff, upon a lawful writ of attachment in favor of the Clark Hutchinson Company, of Boston, against said Harris, as the property of said Harris.

The defendant claimed upon the trial that Harris, at the time of said sale, was insolvent; that under the statutes and common law of Massachusetts said sale was out of the ordinary course of business, and was *prima facie* fraudulent and void against said attaching creditors; and that the transaction between Smith and Harris was one of a series of fraudulent transactions of one Coughlin, Doblin & Rosenthal, and Smith, and in furtherance of a general plan between them to cheat and defraud the creditors of Harris out of their claims against him, by securing to themselves all of his property.

To prove the insolvency of Harris, the defendant offered in evidence certain papers certified by the register of the Suffolk (Massachusetts) Court of Insolvency to be a true copy of papers appertaining to said court, and on file and of record in the office of said court, to wit: schedule of creditors and property filed June 12th, 1895, in the case of Lewis Harris, of Boston, in said County of Suffolk, an insolvent debtor, and copy of the docket entries in said case (the first docket entry being "June 11, 1895, (1) Pet'n by Debtor"); and also another paper certified by the same official to be a copy of a paper appertaining to said court, on file, etc.; "to wit: the examination of Lewis Harris, of Boston, in said County of Suffolk, insolvent debtor," taken February 7th, 1896. Upon the first of said papers was the certificate of the judge of said court of insolvency that the person certifying as the registrar of said court was such officer, the proper certifying officer of the court, and had by law custody of the seal of said court, its books, records, documents, and papers. No such certificate was attached to the second of said papers. To the admission of these papers in evidence counsel for the plaintiff objected, as each was offered, on the ground that they were not properly authenticated, and did not purport

to be a copy of the insolvency proceedings, and did not show that said Harris was ever adjudicated an insolvent, and did not show upon what, if any, proceedings, he was adjudicated an insolvent, and that it did not appear that the Harris therein named was the one who sold these goods to the plaintiff. The court sustained the objection as to each of the papers.

The plaintiff testified that he learned that the stock of goods was for sale, through Doblin & Rosenthal, the former of whom was his brother-in-law, and that he went to Boston with Doblin to examine the stock before purchasing. Upon cross-examination the defendant's counsel asked him the following question: "Did you know that your agents, Doblin & Rosenthal, were in the business of buying bankrupts' stocks for the purpose of cheating their creditors?" To this question the plaintiff's counsel objected, and the objection was sustained.

Doblin was called as a witness for the plaintiff and testified in chief that he and his partner heard that Harris' stock of goods was for sale, through one Coughlin, of Boston; that his partner, Rosenthal, went to Boston to see it, and wrote the witness that he thought the plaintiff (who is a shoe dealer in New York) could use the stock; that the witness thereupon told the plaintiff about it, and that they went on to Boston, examined the stock, and that the plaintiff bought it. Upon cross-examination of this witness, the defendant's counsel asked him the following question: "Have you recently been examined in insolvency in New York?" The plaintiff's counsel objected to the question as not proper cross-examination, and the objection was sustained.

The following question was asked of this witness (he having first testified in response to inquiries that himself, Rosenthal, and the plaintiff went to Harris' store together,) on cross-examination: "Did you make any inquiry of Mr. Harris, or was any made in your hearing, as to the amount of the indebtedness of Mr. Harris?" The question was objected to as not cross-examination, and the objection was sustained. The witness was again called on rebuttal, and then testified that inquiry was made in his presence of Mr. Harris

as to his property and indebtedness, and that Harris replied that he owned the building in which his stock was and the building across the street, and that he had no indebtedness.

This witness, when called in chief, was asked on cross-examination the following questions: "Did you have a transaction of this sort" (meaning the purchase of an entire stock of goods) "with a Mr. Weil, a Walker street dry goods firm? Is this the only stock of goods in East Boston that your firm bought at that time? Did your firm buy any other stocks in East Boston? Were you Smith's agents for the purpose of purchasing any other stocks in Boston?" To each of these questions, when put, the plaintiff's counsel objected, because they were not proper cross-examination, and each objection was sustained.

The defendant offered in evidence declarations of Rosenthal and Harris (who were not called as witnesses), claiming them both as declarations of conspirators with the plaintiff, and to prove a conspiracy; but the court excluded them, being of opinion that no *prima facie* proof of any conspiracy had been shown.

To all evidence offered by the defendant for the purpose of proving fraud, or conspiracy, or the insolvency of Harris, the plaintiff, in addition to the grounds of objection stated heretofore, made the general objection that it was inadmissible under the pleadings. These were a complaint in the statutory form, and the general issue, with notice that the defendant would offer evidence to prove that he had taken the goods as a deputy sheriff on an attachment against Harris in favor of the Clark, Hutchinson & Co., and that they then were and still are the property of Harris.

*Charles H. Fowler*, for the appellant (defendant).

This pretended sale was made to defraud Harris' creditors. Smith, Doblin & Rosenthal, and Coughlin were in the business of buying up insolvent stocks for half value, or less, and thereby help insolvents to cheat their creditors. They had " reasonable cause to believe Harris was insolvent." The pretended sale was therefore void under the Mass. statute.

Public Statutes, Mass., p. 895, Chap. 157; *Denny* v. *Dana,* 2 Cush. 169; *Crafts* v. *Belden,* 99 Mass. 533–539; *Metcalf* v. *Munson,* 10 Allen, 491; *Nary* v. *Merrill,* 8 id. 451; *Stevenson* v. *White,* 5 id. 149; *Otis* v. *Hadley,* 112 Mass. 100, 105; *Buffum* v. *Jones,* 144 id. 29; *Bliss* v. *Crosier,* 159 id. 498–501; *Walbrun* v. *Babbitt,* 16 Wall. 577. Under the Massachusetts law the rights of creditors are paramount to claims of a vendee who buys the whole stock of an insolvent debtor and removes it from the State. *Freeland* v. *Freeland,* 102 Mass. 475–477; *Topley* v. *Forbes,* 84 id. 20–25; *Crafts* v. *Belden, supra.* Reputation of insolvency is competent proof. *Lee* v. *Kilburn,* 3 Gray, 594–598; *Sweetzer* v. *Bates,* 117 Mass. 466. The proof of Harris' insolvency was wrongfully rejected by the trier. *Gardner* v. *Preston,* 2 Day, 209; *Cowles* v. *Coe,* 21 Conn. 220. The evidence of other similar fraudulent transactions by these parties, or any of them, was competent. *Luckey* v. *Roberts,* 25 Conn. 492. The declarations and acts of every one of these parties were admissible to prove the conspiracy and what was done by them to further the common object. *Knower* v. *Cadden Co.,* 57 Conn. 222. The copy of records of the Massachusetts court of insolvency was admissible to prove the matters therein stated. *Clark* v. *Mix,* 15 Conn. 162; *Holcomb* v. *Phelps,* 16 id. 127, 131.

*David Strouse,* for the appellee (plaintiff).

The rule that fraud must be substantially alleged in order to admit proof, is still applicable in all pleadings and actions. *Mahaiwe Bank* v. *Douglass,* 31 Conn. 170; *Mead* v. *Strouse,* 41 id. 565. The defendant having simply claimed in his answer that he would prove the property belonged to Harris, he was bound by such answer, and could not offer evidence of conspiracy or fraud on the part of the plaintiff, or the insolvency of Harris. Neither the creditors of Harris nor his assignee (if he were insolvent and an assignee had been appointed,) could defeat the title of a *bona fide* purchaser for value, of chattels out of the territory of Massachusetts, and at the time of attachment within this State. The insolvent

laws of Massachusetts have no bearing upon the case at bar, because the property in question being personal in its nature, has no settled place but follows its owner. *Upton* v. *Hubbard*, 28 Conn. 274; *Mead* v. *Dayton*, ibid. 39; *Egbert* v. *Baker*, 58 id. 322; *First Nat. Bank* v. *Walker*, 61 id. 154; *Paine* v. *Lester*, 44 id. 196. Fraud does not affect the purchaser unless he had knowledge of it. *Sisson* v. *Roath*, 30 Conn. 15; *Partello* v. *Hain*, 14 Mass. 249; *Pettibone* v. *Phelps*, 13 Conn. 445; *Beach* v. *Catlin*, 26 id. 480. It is not an assignee of the vendor who is in court for the purpose of attacking the title, but a pretended creditor of Harris, who invokes the assistance of our laws to defeat the plaintiff's title. Both parties are thus voluntarily under the sole jurisdiction of our courts, and for all purposes are to be treated as if citizens of our own State. The construction of Massachusetts laws relative to contracts made in that State cannot even be a question here, because there certainly is no claim that these parties made any contract at any place. So that, as between the parties to this suit, the doctrine of *lex loci* cannot mean that Massachusetts law shall govern.

BALDWIN, J. The leading provisions of the Practice Act do not apply to actions of replevin, and the statute authorizes a plea of "the general issue, with or without notice, as may be necessary." General Statutes, §§ 905, 1330. Under such a plea, any evidence which goes to meet the plaintiff's allegations that the goods in question were his property, of which he was entitled to the immediate possession, and that the defendant has wrongfully detained them from him, is relevant and admissible, subject to the statutory rule as to notice contained in the Revision of 1875 (p. 524), Title 19, Chap. 7, § 10. It was therefore competent for the defendant in this action to offer proof that the plaintiff's title was the fruit of a fraudulent conspiracy to cheat the creditors of Harris, who as to them remained the real owner, and upon an attachment against whom the goods were rightfully detained. The issue remains the same, whatever notice may be filed, and the notice

is always liberally construed in favor of the pleader.   *Curtis* v. *Gill*, 34 Conn. 49, 56 ; *Merrill* v. *Everett*, 38 id. 40.

The plaintiff, after buying the goods from Harris, had shipped them from Boston to Doblin & Rosenthal, a firm of auctioneers in New York City, and they were attached while in transit through this State.   He testified in his own behalf that he learned that they were for sale through this same firm, and went on to Boston with one of them who was his brother-in-law, to examine them before purchasing.   Upon cross-examination he was asked : " Did you know that your agents Doblin & Rosenthal were in the business of buying bankrupts ' stocks for the purpose of cheating their creditors ? "   In excluding this question there was error.   If an affirmative answer had been given, it would have set his direct testimony in a new light.   If Doblin & Rosenthal were in the business of buying from bankrupts who sold to defraud their creditors, and the plaintiff knew it, his purchase, upon information received from them, with their aid and in their company, would, especially in view of his relationship to one of the firm, have tended to show that, if this sale was fraudulent, he participated in the fraud.

The question put to Doblin on cross-examination, as to certain insolvency proceedings in New York, was properly excluded.   A witness cannot be thus discredited, by showing that he is an insolvent debtor.

The question asked him in respect to inquiries as to Harris' indebtedness, should have been admitted ; but as the testimony which it sought to elicit was subsequently fully given in rebuttal, no injury was done to the defendant by the ruling.

In excluding the other questions put to this witness, there was error.   The sale by a tradesman of his entire stock of goods to a stranger from another State, followed by their shipment thither for a sale by auction, was a transaction out of the common course of business.   *Walbrun* v. *Babbitt*, 16 Wall. 577.   Doblin was one of the consignees, and had been active in promoting the purchase.   If he had negotiated similar transactions with other tradesmen, at the same place, and about the same time, and had been employed by

the plaintiff for such purposes, these facts would have had some tendency to discredit his statement that the sale was made to Smith, as well as to show the conspiracy claimed by the defense.

The copy of the record of Harris' examination in the Court of Insolvency for Suffolk county, Massachusetts, was properly excluded, because the exemplification lacked the certificate from the judge of the court required by the Rev. Stat. of the U. S., § 905. Had due latitude been allowed upon the cross-examination of the plaintiff's witnesses, it is possible that enough might have been brought out to constitute, in the opinion of the trial court, such evidence of a fraudulent conspiracy as to justify the admission of declarations of any of those who were claimed to have been parties to it. But, even in that case, this examination in insolvency, having been taken a year after the sale to Smith, could not have been received. Declarations of one conspirator are admissible against another only when made in the course of the conspiracy. *Knower* v. *Cadden Clothing Co.*, 57 Conn. 202, 222.

The other copies were properly authenticated, and the records and judicial proceedings which were their subject were thereby entitled to have such faith and credit given to them in our courts as they have by law or usage in the courts of Massachusetts. U. S. Rev. Stat., § 905. The statutes of that State provide as follows: " The proceedings in courts of insolvency shall be deemed matters of record, and the assignment and certificate of discharge shall be recorded in full. The other proceedings need not be recorded at large, but shall be carefully filed, kept, and numbered in the office of the register. Copies of all parts of the records . . . duly certified by the register, shall in all cases be admissible as prima facie evidence of the facts therein stated. . . . The register shall keep a docket with an alphabetical index of all cases in court, in which he shall enter short memorandums, with the numbers, of all proceedings and papers filed." Public Stat. of Mass., ed. of 1882, Chap. 157, §§ 6, 7, p. 880. The assignment, which is to be recorded at

length, is one made by the judge of the court, conveying the debtor's estate to such assignee as may be appointed at or after the first meeting of the creditors. Ibid., §§ 40, 44. Voluntary insolvency proceedings are commenced by a petition addressed to the judge, upon which a warrant may issue directing the sheriff to take possession of the debtor's property.

The copy of the docket entries offered in evidence began as follows:—

```
" No. 3142          Lewis Harris                        Boston.
1895                (1)        (2)    $25.  Deposit   Costs.
June 11      Pet'n by Debtor.  Warrant rete.  July 26th
             1895, 10 A. M. Po. & Trav.
                              (3)                 (4)
     "  12   Schedule; of Creditors, of Property
 ( July 26     First meeting, warrant ret'd.
             1st publ'n June 13th, 1895
                              (5)
             Claims proved—Joseph Caro, Barnard
               (6)         (7)
             Ginzberg, Albert W. Hixon and Co.
First            (8)           –9–
Meeting        Louis Nelson, Austin Stone and Co.
               –10–         –11–
             W. H. Grainger;  List of Debts
             John H. Blanchard, assignee:—
                       –12–
             Acceptance, Assignment recorded
 (           Vol. XI, page 265."
```

This transcript also included copies at length of a " Schedule of property, in the case of Lewis Harris, Insolvent Debtor, Case No. 3142," which stated that he had no property ; and of a " Schedule of Creditors " in the same case, among whom appeared " Clark, Hutchinson & Co., $355.88," and others, whose claims in all amounted to over $2,700. Each schedule was signed by Harris, sworn to by him on June 8th, 1895, and filed in the Court of Insolvency on June 12th.

Every State has the right to determine for itself how fully the judicial proceedings in its courts shall be recorded. Massachusetts has deemed it sufficient, in her Courts of Insolvency, simply to minute all the proceedings, upon a voluntary petition, on the docket, down to the point of the actual assignment of the insolvent estate. This does not affect their judicial character or evidential weight. *Read* v. *Sutton,*

2 Cush. 115, 123.    The docket entries are entries of judicial proceedings, and a certified transcript of them constitutes the proper proof that such proceedings have been had.    Those now in question were proper evidence that Lewis Harris of Boston filed a petition in voluntary insolvency on June 11th, 1895, and on the next day schedules of his estate and of his creditors.    The abbreviations used were such as can be readily understood, and are to be read as if the proper words had been written out in full.    *Erwin* v. *English*, 61 Conn. 502, 507.

The sale to the plaintiff took place in February, 1895, nearly three months earlier.    For reasons already stated, therefore, no mere declarations as to past transactions, made by him before the Court of Insolvency, in or after June, 1895, would be admissible against the plaintiff, even if both had been engaged in a previous conspiracy to defraud his creditors.    Hearsay does not change its nature by being communicated to a court of justice.    But that he occupied, in that month, the *status* of an insolvent debtor, under the laws of his State and before its courts, was a fact which bore directly upon the defense set up.    If, at the time of the sale in controversy, he intended a fraud upon his creditors, one way to effect his purpose would be to conceal or dispose of the proceeds and then take an early opportunity to get rid of his obligations by applying for a discharge in insolvency.    His petition in insolvency was a step in that direction.    It is unimportant whether the statements which it contained, or those of the schedules by which it was supported, were true or not, or whether, under the statute of the United States and the laws of Massachusetts, they were to be accepted in our courts as *prima facie* true.    They were a part of the record of the cause ; they were statements of a kind which it was necessary to make in order to support the jurisdiction of the court to proceed to grant a discharge ; and the fact that Clark, Hutchinson & Co. were included in the schedule of creditors (without regard to the question whether they were in fact among his creditors or not), tended to identify Lewis Harris of Boston, the insolvent debtor, with Louis

Harris of Boston, the plaintiff's vendor. This transcript should therefore have been received in evidence.

There is no ground for the remaining reasons of appeal, and the rulings complained of are so obviously correct that no discussion of them is required.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.