RICHARD T. O'CONNELL, ADMINISTRATOR, *vs.* GEORGE REMINGTON ET ALS.

First Judicial District, Hartford, March Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

In construing a testamentary provision of doubtful meaning, the terms of an earlier will, executed two weeks prior to the one in question, may be considered as part of the circumstances surrounding the execution of the later will.

A gift over "of the avails arising from the improvement of the farm," was not a devise of the fee where it was apparent the testator

O'Connell *v.* Remington.

used the word "improvement" in its familiar sense of a beneficial use.

A gift over "at Dexter Remington's decease" to "the heirs of said Dexter and Jane M. Ford," was not a gift to the latter's heirs, but to her directly, in view of the obvious intention of the testator, gathered from the surrounding circumstances, to benefit her during her lifetime.

Under the statute of perpetuities in force at the death of the testator, the gift over "to the heirs of said Dexter" after his decease, was void.

There was no merit to the claim that certain proceedings instituted in the Superior Court in 1866 resulted in any judgment decisive of the questions in the present suit.

The entry on the back of the original petition in those proceedings— "bill dismissed with costs taxed at the sum of $40"—was evidence of a final disposition of the cause denying the plaintiff's claims for relief.

This court will not give advice in the construction of a will where one or more persons to be affected are not parties to the suit.

Argued March 5th—decided April 22d, 1925.

Suit to determine the construction of the will of John Fuller, late of Suffield, deceased, brought to the Superior Court in Hartford County and reserved by the court, *Jennings, J.,* upon an agreed statement of facts, for the advice of this court.

John Fuller of Suffield died July 7th, 1864, leaving a will dated July 5th, 1864, which was admitted to probate, and of which the plaintiff is now administrator *de bonis non.*

The testator left him surviving, a widow, who died in 1879, and two married sisters, his heirs at law; Eliza Fuller, who died in 1865, leaving three children not mentioned in the will, and not made parties to this action; and Mary Remington, who died in 1885, leaving two children, Dexter Remington and Jane M. Ford. Mary Remington survived her husband, Thomas, who by his will gave her the life use of all his estate with remainder in fee to Dexter Remington. Mary Remington, also by her will, gave all her estate absolutely

to Dexter. Dexter died in September, 1920, leaving three children and two grandchildren, all surviving and made parties hereto, and constituting one class of claimants. Jane M. Ford died in July, 1911 (her husband, Horace, is also dead), leaving eight children, all surviving and made parties hereto, constituting the second class of claimants.

The testator's will, after making provision for his widow for life, proceeds as follows: "After my decease, all my real estate to be used and occupied by Dexter Remington and Thomas Remington so long as they live, including all the stock. Dexter Remington to use, occupy, and improve so much of my house as my executor may determine, but not to interfere with the privileges of my wife Sybil Fuller. At the decease of Thomas Remington, then my will is that Dexter improve and occupy the real estate, and at Dexter Remington's decease the avails arising from the improvement of the farm to be equally divided between the heirs of said Dexter and Jane M. Ford. I hereby appoint Horace Sheldon of Suffield as my executor of this my last will and testament, revoking all other and former wills by me at any time made."

Prior to the execution of this will the testator had made a will dated June 16th, 1864; in which he gave to Jane M. Ford, outright, $500 and a wood-lot, and, at the death of his wife, all his furniture and household effects; he also gave Jane a life interest in the farm at the death of Dexter Remington.

Both of these wills were in existence at the death of the testator, and Jane and Horace Ford were dissatisfied with the provision made for Jane in the later will, claiming that the testator was incompetent at the time it was made.

On the day before the hearing on the probate of the testator's will of July 5th a settlement was made

between Thomas Remington and the Fords, whereby the Fords, in consideration of $2,500, quitclaimed to Thomas Remington all their interest in the estate of John Fuller and "every claim, right, title, interest and demand which we now have, or may have, against said estate."

In 1866 Thomas Remington brought a suit alleging that the Fords, notwithstanding their deed, then claimed that the deed conveyed nothing, because the gift over in the will of John Fuller, after the death of Dexter, was not to Jane, but to her heirs. The cause was referred to a committee whose report was accepted, and a judgment was finally entered for the defendants, apparently because the defendants did not deny that Thomas Remington acquired by the quitclaim whatever interest Jane had in the Fuller estate, and because that was all that the deed purported to convey. The only estate of John Fuller now in plaintiff's hands is the farm referred to in his will.

On the death of Dexter Remington in 1920, conflicting claims were made on the present administrator, as the result of which this suit was instituted. The questions reserved for our advice are formulated as follows:

"1. Whether according to the true and legal construction of the following words: 'The avails arising from the improvement of said Farm' in the following paragraph of said will of July 5, 1864: 'At the decease of Thomas Remington my will is that Dexter improve and occupy the real estate and at Dexter Remington's decease the avails arising from the improvement of the farm to be equally divided between the heirs of said Dexter and Jane M. Ford'—the testator disposed merely of the profits and improvements arising from working said farm, or whether by said words the testator disposed of the fee of said farm, together with the income, profits and improvements thereof.

O'Connell *v.* Remington.

"2. Whether according to the true and legal construction of the following words: 'At Dexter Remington's decease the avails arising from the improvement of the farm to be equally divided between the heirs of said Dexter and Jane M. Ford'—as used in the above quoted paragraph of said will of July 5, 1864, Jane Ford herself acquired any interest, reversionary or otherwise in said farm, or whether the fee of said farm upon the death of John Fuller vested directly in the heirs of Dexter Remington and the heirs of Jane M. Ford, and Jane M. Ford herself acquired no interest in said farm.

"3. Whether or not the report of Wm. W. Eaton, Committee of the Superior Court upon the petition of Thomas Remington vs. Horace K. and Jane M. Ford et al., in the proceedings had in the Superior Court and in the Supreme Court of Errors in 1866 and 1867, which report was accepted by the Superior Court and from the acceptance of which report no appeal was taken, operates in any manner—

"(a) To estop the defendants, John Ford and Eliza K. Bray, children of Jane M. Ford, and parties to said proceedings, from asserting at this time a claim to any part of the estate of said John Fuller.

"(b) To estop the defendants, Frank Ford, Willis Ford, Charles Ford, Albert Ford, Emogene F. Woods and Edith Ford Phelps, children of said Jane M. Ford, unborn at the time of said proceedings and not made parties thereto, from asserting at this time a claim to any part of the estate of said John Fuller.

"4. Whether, if the heirs of Dexter and the heirs of Jane M. Ford take under said will, they take *per stirpes* or *per capita.*

"5. What weight or effect, for the purpose of the distribution of said real estate, should be given to the deed to said Thomas Remington executed by said Jane

M. Ford and Horace K. Ford, her husband, on the 31st day of August, 1864.

"6. What effect should be given to the entry on the back of the original petition in the case of Thomas Remington vs. Horace K. and Jane M. Ford et al. 'Bill dismissed with costs taxed at the sum of $40.'

"7. Whether the action of the Superior Court in accepting the report of the committee was *res adjudicata* as to the rights of the parties in this action."

*Richard T. O'Connell,* for the plaintiff.

*Hugh M. Alcorn* and *Cornelius J. Danaher,* for the defendants, heirs of Remington.

*Arthur R. Bostick,* with whom was *J. Agnes Burns,* and, on the brief, *William F. Henney,* for the defendants, heirs of Ford.

BEACH, J.   Answering question one, we are of opinion that the gift over at the death of Dexter Remington, of "the avails arising from the improvement of the farm" does not convey the fee.   If the testator so intended, he has not used words capable of that construction.   If the gift had been of "the avails of the farm," and if a direction to the executor to sell the farm had been expressed, or could reasonably have been inferred, an intent to make a final distribution of the proceeds of such sale would have been manifested. But the gift is limited to the avails arising from the "improvement" of the farm, and the decisive point is what the testator meant by the use of the last quoted word.   The antecedent life estates in Dexter Remington are created by the words "Dexter Remington to use, occupy, and improve so much of my house as my executor may determine," etc., and, in the same sen-

tence as the gift over, "at the decease of Thomas Remington, then my will is that Dexter improve and occupy the real estate, and at Dexter Remington's decease the avails arising from the improvement of the farm to be equally divided between the heirs of said Dexter and said Jane M. Ford."

In creating the life estates in Dexter, the testator obviously uses the word improve in its familiar sense of a beneficial use. And in looking back at the will of June 16th, executed about two weeks before the execution of the probated will, we find the same word used in the same sense, and in a clause corresponding closely to that under discussion; viz.: "After my decease my real estate to be used and occupied and improved by Dexter Remington, so long as he lives, and at his decease the real estate to be used and occupied and improved by Jane M. Ford, wife of Horace K. Ford, and at the decease of the said Jane M. Ford, the avails from working the farm to be equally divided between the heirs of the said Dexter and the said Jane M. Ford." Evidently the words "avails from working said farm" in the former will mean the same thing as "avails arising from the improvement of the farm" in the probated will. We think the gift in question must be construed as a gift of the proceeds arising from the use or working of the farm, to be divided equally between the heirs of Dexter and Jane M. Ford.

Answering question two, we are of opinion that the intended beneficiaries of the gift were the heirs of Dexter and Jane M. Ford herself. It will be noted that Jane was living when the will was executed and at the testator's death; that she is now mentioned for the first and only time in the will, and as her death is not suggested in the will and the gift is to her by name, the reference is almost necessarily to her as a living person. Looking again at the will of June 16th,

which is so nearly contemporaneous that its recent execution is one of the circumstances surrounding the execution of the probated will, we find that the testator then made provision for Jane during her life by absolute gifts and life interests. In the probated will all these provisions are wanting. She receives nothing until Dexter's death and then the proceeds of the improvement of the farm are to be equally divided "between the heirs of said Dexter and Jane M. Ford." To insert by construction the words "heirs of" before Jane's name would cut her off entirely from the testator's bounty, and impute to him an entire change of testamentary intent in that respect, which is not warranted by his language or accounted for by any fact stipulated. It was entirely natural that after having made other provision for her in her lifetime he should, in the former will, leave one half of the "avails from working said farm" to her heirs at her decease; and it is equally natural that having revoked all other provisions in her behalf by the probated will he should leave one half of the avails arising from the improvement of the farm to her at the death of Dexter.

To both subdivisions (a) and (b) of question three, we answer, No. We cannot see that the proceedings instituted by Thomas Remington in the Superior Court in 1866 resulted in any judgment decisive of the merits of the cause now before us. Question four is so phrased as to require an answer to the question whether the heirs of Dexter Remington take under the will, and since the statute of perpetuities, now repealed, was in force at the death of John Fuller, we are bound to say that the gift over to the heirs of Dexter, after his decease, was invalid and of no effect. *Leake* v. *Watson,* 60 Conn. 498, 21 Atl. 1075.

As to the fee of his real estate, the testator died intestate, and at his death the fee vested in interest in his

O'Connell *v.* Remington.

sisters, Mary Remington and Eliza Fuller, as tenants in common; and it now appears by the amended stipulation that Mary Remington by her will left all her estate absolutely to Dexter Remington. This last fact has, however, nothing to do with the construction of John Fuller's will.

That fact is, however, material in answering question five, as to what effect, for the purpose of the distribution of the real estate, should be given to the quitclaim deed to Thomas Remington executed by Jane and Horace Ford in 1864; for it now appears that Jane Ford never acquired any interest in her mother's share of the fee in the real estate, and hence her quitclaim operated only as a conveyance of her share of the avails arising from the improvement of the farm. We are not asked to advise the administrator as to the distribution of Eliza Fuller's share of the fee in the real estate, nor could we, in the absence of her heirs, undertake to do so.

To question six, we reply that the entry on the back of the original petition in the case of Thomas Remington vs. Horace K. and Jane M. Ford, *et al.,* "Bill dismissed with costs taxed at the sum of $40," evidences a final disposition of the cause denying the plaintiff's claims for relief.

The seventh question has already been answered in the negative.

The Superior Court is advised to enter judgment in accordance with this opinion. No costs will be taxed in this court in favor of any of the parties.

In this opinion the other judges concurred.