STATE OF CONNECTICUT *v.* ALAZARON SARGEANT
(SC 17698)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Schaller, Js.

---

Argued May 21—officially released September 16, 2008

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Alazaron Sargeant, appeals from the judgment of conviction, rendered after

a jury trial, of four counts of sexual assault in the first degree as a principal and as an accessory in violation of General Statutes §§ 53a-70 (a) (1)[1] and 53a-8 (a),[2] and one count each of kidnapping in the first degree with a firearm as a principal or accessory in violation of General Statutes §§ 53a-92a (a) and 53a-8 (a), conspiracy to commit kidnapping in the first degree with a firearm in violation of General Statutes §§ 53a-48 (a) and 53a-92a (a), attempt to commit assault in the first degree as a principal or accessory in violation of General Statutes §§ 53a-49 (a) (1), 53a-59 (a) (1) and 53a-8 (a), conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (1) and robbery in the first degree as a principal or accessory in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8 (a).[3] The defendant claims that the trial court improperly denied his motion for a judgment of acquittal with respect to three of the four counts of sexual assault in the first degree because the evidence was insufficient to permit the jury reasonably to identify the defendant as the perpetrator of the assaults. We reject the defendant's claim and affirm the judgment of conviction.

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-8 provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[3] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

The jury reasonably could have found the following facts. On September 26, 2003, at approximately 12:30 a.m., the victim[4] was driving home alone in the city of West Haven when she stopped her vehicle at a red stoplight at the intersection of First Avenue and Spring Street. A stolen car driven by Clifton Foreman, in which the defendant, Nathaniel Roberts and Earl Banks were passengers, pulled up and stopped alongside of the victim's vehicle. The defendant and Foreman, both of whom were wearing ski masks and brandishing handguns, exited the vehicle and ordered the victim to "get out of the car . . . ." The victim exited her vehicle as instructed because she "thought that they just wanted to have [her] car and [her] money." The defendant positioned himself in the driver's seat of the victim's vehicle and opened the trunk, while Foreman ordered the victim into the trunk and closed the lid. Foreman then drove off in the victim's vehicle with Banks, while the defendant followed in the stolen car with Roberts.

At this point, the victim realized that she still had possession of her cellular telephone and promptly dialed 911 emergency services. She explained to the dispatcher that she had been "carjacked and kidnapped" in West Haven, but that she was unaware of her current location because she was confined to the trunk. Foreman heard the victim talking on her cellular telephone, however, and he stopped the car, opened the trunk and yelled at the victim "who are you talking to? Do you have a cell phone? Who are you talking to?" The victim had the presence of mind to conceal her cellular telephone among her personal possessions stored in the trunk and to babble nonsensically to delude Foreman into thinking that she merely was talking to herself hysterically. The victim's ruse was suc-

---

[4] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

cessful and Foreman closed the lid of the trunk, turned the radio up to a high volume and resumed driving.

Foreman and the defendant eventually stopped and parked their vehicles in a cutout on a dark, isolated and wooded section of Northrop Road in Woodbridge. The victim was directed out of the trunk at gunpoint, instructed to walk into the woods and ordered to remove her clothing. Although the victim complied with this order by removing her jacket, Foreman and the defendant proceeded to rip off the remainder of her clothing until she was naked. Foreman then forced the victim to perform oral sex on him, while the defendant approached the victim from behind and penetrated her vagina with his penis. After both Foreman and the defendant had climaxed, they switched positions and the defendant forced the victim to perform oral sex on him, while Foreman approached the victim from behind and penetrated her vagina with his penis. The defendant subsequently masturbated in the victim's face and, at the point of climax, thrust his penis in her mouth and forced her to swallow his ejaculate. Afterward, the defendant wiped out the inside of the victim's mouth with a white cloth.

After he sexually assaulted the victim, the defendant "tried to snap [the victim's] neck" by twisting her head quickly and violently. The victim fell to the ground, and Foreman proceeded to strike the victim's head repeatedly with a sharp rock. The victim feigned death, hoping that her attackers would cease their relentless assaults. Believing the victim to be dead, the defendant, Foreman, Banks and Roberts fled the scene.

The defendant subsequently was arrested and charged with four counts of sexual assault in the first degree as a principal and as an accessory in violation of §§ 53a-70 (a) (1) and 53a-8 (a), and one count each of kidnapping in the first degree with a firearm as a

principal or accessory in violation of §§ 53a-92a (a) and 53a-8 (a), conspiracy to commit kidnapping in the first degree with a firearm in violation of §§ 53a-48 (a) and 53a-92a (a), attempted assault in the first degree as a principal or accessory in violation of §§ 53a-49 (a) (1), 53a-59 (a) (1) and 53a-8 (a), conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (1) and robbery in the first degree as a principal or accessory in violation of §§ 53a-134 (a) (4) and 53a-8 (a). Following the presentation of the state's case-in-chief, the defendant moved for a judgment of acquittal with respect to the four counts of sexual assault in the first degree, claiming that the evidence was insufficient to permit the jury reasonably to identify the defendant as the perpetrator of the assaults. The trial court denied the defendant's motion, and subsequently submitted the case to the jury for deliberation. The jury found the defendant guilty of all of the offenses with which he was charged, and the trial court rendered judgment in accordance with the jury's verdict. Thereafter, the trial court sentenced the defendant to a total effective term of imprisonment of eighty-five years. This direct appeal followed.

As an initial matter, we note that the defendant's challenge to the sufficiency of the evidence is a limited one. The defendant does not challenge the sufficiency of the evidence to support his convictions of kidnapping in the first degree with a firearm, conspiracy to commit kidnapping in the first degree with a firearm, attempted assault in the first degree, conspiracy to commit assault in the first degree and robbery in the first degree. Furthermore, the defendant does not dispute that the evidence was sufficient to convict him of one count of sexual assault in the first degree because the victim testified that the defendant was similar in appearance to the individual who masturbated in her face and forced her to swallow his ejaculate. Rather, the defen-

dant claims only that the evidence was insufficient to permit the jury reasonably to find that he had committed, or that he had aided in the commission of, the three remaining counts of sexual assault. Specifically, the defendant claims that "[b]eyond . . . one act of oral intercourse . . . there was no testimony from the [victim] which made a sufficient identification of the defendant . . . to constitute proof beyond a reasonable doubt for any other act of sexual assault, particularly since both acts of vaginal intercourse occurred from behind." The defendant's claim has no merit and, therefore, we firmly reject it.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Inter-

nal quotation marks omitted.) *State* v. *John F.M.*, 285 Conn. 528, 544 n.15, 940 A.2d 755 (2008).

In the present case, the defendant was charged with sexual assault in the first degree both as a principal offender and as an accessory. "Since under our law both principals and accessories are treated as principals . . . if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [sexual assault] charged or did some act which forms . . . a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the convictions must stand. . . . To prove guilt as a principal, the state must prove each element of the offense charged beyond a reasonable doubt. To be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Internal quotation marks omitted.) *State* v. *Diaz*, 237 Conn. 518, 543, 679 A.2d 902 (1996).

The following additional facts are necessary for our resolution of this claim. At trial, the victim testified that, by the time she was forced to exit the trunk of her car at gunpoint and to walk into the woods, her captors no longer were wearing ski masks and she was able to observe that they were African-American. Although, during her ordeal, she was unable to view the individuals who sexually assaulted her vaginally from behind, she was able to get a close look at the individual who masturbated in her face, forced her to swallow his ejaculate and attempted to snap her neck. She described this individual as "a large person, [a] big person" who had "a big, wide, flat nose and chubby cheeks." She testified that the defendant was similar in body size and appearance to this individual, in partic-

ular, the appearance of "[h]is nose . . . and his cheeks." The parties stipulated that, at the time of the offense, the defendant was five feet eight inches tall and weighed approximately 240 pounds.

Roberts also testified concerning the defendant's role in the sexual assaults suffered by the victim. Roberts testified that, upon arriving at the wooded area on Northrop Road, the defendant and Foreman forced the victim to exit the trunk of her vehicle and carried her into the woods, while he and Banks remained seated in the stolen vehicle. Thereafter, Roberts and Banks exited the stolen vehicle and entered the woods, where they watched as the defendant and Foreman forcibly removed the victim's clothing. Foreman then forced the victim to perform oral sex on him, while the defendant positioned himself behind the victim with his pants slung low.

In light of the victim's testimony that she was sexually assaulted vaginally from behind while being forced to perform oral sex on one of her captors, and in light of Roberts' testimony that the defendant was positioned directly behind the victim with his pants slung low while Foreman penetrated the victim's mouth with his penis, the jury reasonably could have inferred beyond a reasonable doubt that the defendant sexually assaulted the victim vaginally on at least one occasion.

Moreover, because the defendant was charged with sexual assault in the first degree as an accessory, the state was not required to prove that the defendant sexually assaulted the victim personally.[5] As previously

_____

[5] The Appellate Court has concluded that a criminal defendant need not have sexually assaulted a victim personally in order to be found guilty of sexual assault in the first degree as a principal offender under § 53a-70. See *State* v. *Mahon*, 97 Conn. App. 503, 512 n.6, 905 A.2d 678 ("We note that to be found guilty of sexual assault in the first degree in violation of . . . § 53a-70 [a], one need not engage in sexual intercourse with the victim. Rather, the statute extend[s] liability . . . to those who compelled another to engage in sexual intercourse but did not engage in intercourse themselves." [Internal quotation marks omitted.]), cert. denied, 280 Conn. 930,

explained, "[t]o be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Internal quotation marks omitted.) *State* v. *Diaz*, supra, 237 Conn. 543. We conclude that the evidence adduced at trial was more than sufficient to support the jury's factual finding that the defendant knowingly and wilfully assisted in at least three instances of sexual assault of the victim.[6] Both the victim and Roberts testified that the defendant abducted the victim at gunpoint, forced her to an isolated and secluded area of the woods, forcibly removed all of her clothing and positioned his considerable bulk behind the victim while she was forced to perform oral sex on Foreman. Additionally, the victim testified that, during her ordeal, she was sexually assaulted vaginally at least twice. On the basis of this evidence, the jury reasonably could have found

909 A.2d 958 (2006); *State* v. *Warren*, 14 Conn. App. 688, 692–93, 544 A.2d 209 ("[b]y its very terms, this statute imposes liability for sexual assault on any person who compels another person, by the use of force, to engage in sexual intercourse, regardless of with whom the sexual act is performed"), cert. denied, 209 Conn. 805, 548 A.2d 442 (1988), cert. denied, 488 U.S. 1030, 109 S. Ct. 839, 102 L. Ed. 2d 971 (1989); see also General Statutes § 53a-70 (a) (1) ("[a] person is guilty of sexual assault in the first degree [if he or she] . . . compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person"). Because we conclude that the evidence amply supports the defendant's conviction of sexual assault in the first degree under a theory of accessorial liability, and because "[t]he accomplice liability statute permits an accessory to be '*prosecuted and punished as if he were the principal offender*' "; (emphasis in original) *State* v. *Davis*, 255 Conn. 782, 792, 772 A.2d 559 (2001); we need not determine whether the evidence is sufficient to support the defendant's conviction of the two remaining counts of sexual assault in the first degree as a principal offender.

[6] Additionally, as previously explained, the defendant concedes that the evidence was sufficient to support his conviction of a fourth instance of sexual assault in the first degree.

that the defendant shared the "criminality of intent and [community of] unlawful purpose"; (internal quotation marks omitted) id., 539–40; to sexually assault the victim and, therefore, knowingly and wilfully assisted in at least one instance of oral sexual assault and at least two instances of vaginal sexual assault. See, e.g., *In re Robert H.*, 199 Conn. 693, 711–13, 509 A.2d 475 (1986) (evidence sufficient to support conviction of sexual assault in first degree as accessory because defendant removed victim's clothing and restrained her during course of sexual assault); *State* v. *Mahon*, 97 Conn. App. 503, 512, 905 A.2d 678 (evidence sufficient to support defendant's conviction of sexual assault in first degree as accessory because defendant removed victim's underpants to assist companion in sexually assaulting her), cert. denied, 280 Conn. 930, 909 A.2d 958 (2006); *State* v. *Rogers*, 38 Conn. App. 777, 790–94, 664 A.2d 291 (evidence sufficient to support defendant's conviction of sexual assault in first degree as accessory because defendant cheered on his companions as they sexually assaulted victim), cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996); *State* v. *Wideman*, 36 Conn. App. 190, 202–203, 650 A.2d 571 (1994) (evidence that defendant's presence intimidated and frightened victim when defendant's companions sexually assaulted her was sufficient to support defendant's conviction of sexual assault in first degree as accessory), cert. denied, 232 Conn. 903, 653 A.2d 192 (1995). The defendant's claim of evidentiary insufficiency therefore is without merit.

The judgment is affirmed.

In this opinion the other justices concurred.