HELENA DART *v.* ETHEL D. MECUM, SUPERINTENDENT OF LONG LANE SCHOOL

SUPERIOR COURT      MIDDLESEX COUNTY      FILE NO. 12590

Memorandum filed July 25, 1955.

*Istas & Chisaski,* of New Haven, for the plaintiff.

*John J. Bracken,* attorney general, and *Ernest H. Halstedt,* assistant attorney general, of Hartford, for the defendant.

ALCORN, J. The applicant for this writ of habeas corpus is a minor, over the age of sixteen years, who is presently held at the Long Lane School under a commitment from the Juvenile Court for the second district. She seeks her release upon the ground that her confinement is illegal and that she has been denied admission to bail. No evidence was presented upon the second ground, namely, that she had been denied bail.

The facts may be summarized as follows: The applicant was born on February 17, 1939. Upon a petition alleging her to be delinquent a hearing was

held in the Juvenile Court on December 13, 1954, and continued until January 17, 1955. After the latter hearing the applicant, with her parents and their other children, traveled from their home in Connecticut to Florida and thence to Louisiana while the applicant's father searched unsuccessfully for work en route. The father had regular employment in Connecticut and surrendered seven years seniority rights in his union by leaving his employment here. In Louisiana he ran out of funds but obtained financial aid to bring his family back to Connecticut. The family returned to this state on February 7, 1955, and have lived here since. No act of delinquency was committed by the applicant thereafter, but on March 25, 1955, she was taken into custody by the police, held in the custody of the juvenile authorities, and the parents were notified to appear at a hearing at the Juvenile Court on March 28, 1955. In the interim the applicant had become sixteen years of age. After the hearing on March 28, 1955, she was committed to Long Lane School and has been confined there ever since.

It is the claim of the applicant's father that he was required to take his family out of the state because the Juvenile Court directed that unless he did so the applicant would be committed. In opposition it is claimed that the suggestion of moving out of the state came from the applicant's father and was accepted by the court. However the idea originated, it is clear that the family left the state solely as a result of the proceedings at the Juvenile Court hearing on January 17. As will appear from what is said hereafter, it is unnecessary to determine the source of the suggestion.

The applicant contends that the hearing of March 28, 1955, was a new proceeding and, it having been instituted after the applicant had reached the age of sixteen, the Juvenile Court lacked jurisdiction to

order the commitment. The respondent contends that the hearing of March 28 was but a continuation of the prior proceedings on January 17, 1955. It is clear that no new petition for action by the court was filed prior to the March 28 hearing. The petition upon which the January 17 hearing was held is not in evidence, but there is no dispute that there was such a petition alleging delinquency.

The Juvenile Court is a court of record. General Statutes, § 2821. Its proceedings constitute "a civil inquiry, to determine whether, in a greater or less degree, some child should be taken under the direct care of the State and its officials." *Cinque* v. *Boyd,* 99 Conn. 70, 83. As a court of record, it can speak only through its record. *Atwood* v. *Lockwood,* 76 Conn. 555, 558. A record in judicial proceedings always includes a judgment, which is "the termination and sentence of the law pronounced by the court upon the matter contained in the records." *Smith* v. *Jewell,* 71 Conn. 473, 476. In order to determine the issues litigated, the record and the memorandum of decision of the trier may be searched. *Tolman* v. *McLay,* 114 Conn. 98, 101. The record of the Juvenile Court discloses that no judgment file was prepared following the hearing on January 17, 1955. There is, however, a docket entry signed by the judge, reciting as follows:

"Disposition Jan. 17, 1955—Helena is committed to Supt. of Long Lane School, execution of commitment is suspended. Child to reside with parents in Dover, New Jersey."

Docket entries are entries of judicial proceedings and, when duly authenticated, constitute proper proof that such proceedings have been had. *Smith* v. *Brockett,* 69 Conn. 492, 502. Such a notation in the docket amounts to an entry "made when a judgment is rendered in order to preserve accurately and

put upon immediate public record the acts of the court." *State* v. *Lindsay,* 109 Conn. 239, 242. Such an entry may stand as adequate evidence of a judgment. Id., 243; *O'Connell* v. *Remington,* 102 Conn. 401, 409.

In the absence of a judgment file, the docket entry as quoted evidences the judgment pronounced at the conclusion of the hearing on January 17, 1955. Its terms are unambiguous. The applicant was committed to Long Lane School and the execution of the commitment was suspended. She was not placed under the supervision of a probation officer. The suspension of execution of the commitment was unconditional and without time limit. The applicant was going to live with her parents in Dover, New Jersey. That fact is obviously not stated as a condition of the suspension nor as a probationary requirement, since the judgment is silent as to probation. The court's decision as pronounced and thus reduced to writing is conclusive. *Alcorn* v. *Fellows,* 102 Conn. 22, 26.

The limits of the Juvenile Court's authority are fixed by statute. So far as now material, "[t]he court, if it shall find that the child needs the care, discipline or protection of the state, may so adjudge and commit the child to any public or private institution or agency which is permitted by law to care for children, commit him to the care and custody of some suitable person, order the child to remain in his own home subject to the supervision of the probation officer or withhold or suspend judgment." General Statutes, § 2813. Commitments once made "may be reopened and terminated at any time" within prescribed limitations. § 2814.

The statutes contain no authorization to the Juvenile Court to suspend execution of a commitment. In that respect, the court's power differs from that of courts having criminal jurisdiction, which are

authorized by statute to suspend the execution of a sentence in proper cases and thereafter to revoke such suspension, whereupon the sentence becomes effective. General Statutes §§ 8836, 8837; *Masucio* v. *Platt,* 8 Conn. Sup. 188. The statute does, however, permit the Juvenile Court to suspend judgment. Such power, in its proper meaning, connotes that judgment is not pronounced and is thus distinguished from the suspension of execution of a judgment which has been pronounced. *Belden* v. *Hugo,* 88 Conn. 500, 503. In essence the suspension of judgment amounts to withholding judgment. It is unnecessary for present purposes to decide whether the legislature intended the quoted language of § 2813 to confer upon the Juvenile Court two distinct powers or an identical power by the use of the words "withhold or suspend judgment."

What the Juvenile Court purported to do on January 17, 1955, was to pronounce a judgment of commitment to Long Lane School, which it had the power to do, and then to suspend the execution of the commitment, which it was without power to do under the statute.

After the hearing in the Juvenile Court on March 28, 1955, a commitment order issued which made no reference to the prior proceedings. By its terms it purported to be an original commitment as of its date. On the same date, however, the court filed a memorandum of decision reciting, in substance, that the applicant had been found in need of constant supervision as a result of the hearings on December 13, 1954, and January 17, 1955, and had been committed to Long Lane School but that execution of the commitment had been suspended on the pleas of her parents that she be allowed to accompany them to New Jersey. The memorandum then indicates that the action taken by the court on March 28, 1955, was the result of the return of the applicant and her

parents to Connecticut "without notice to or permission of 'the court."

Since the commencement of this habeas corpus proceeding an amended order of commitment has been filed designed to conform by its terms to the action taken by the court as outlined in the memorandum of decision.

The record thus makes it appear that the action which the court purported to take on March 28, 1955, was to revoke the suspension of the execution of the January 17, 1955, judgment. As already indicated, the statutes do not confer upon the Juvenile Court any power to do this. It follows that 'the commitment under which the applicant is held is illegal.

The writ of habeas corpus is sustained and Helena Dart is ordered released forthwith from the custody of Long Lane School 'to return to her parents, who are entitled to her custody.