# IN RE EARL B.*
## (AC 30491)
Bishop, Alvord and Foti, Js.

Argued November 17, 2009—officially released May 18, 2010

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*James Jude Connolly*, supervisory assistant public defender, for the appellant (respondent).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Cathleen Edwards*, supervisory juvenile prosecutor, for the appellee (state).

*Opinion*

FOTI, J. The respondent, Earl B., appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, he claims that the sentencing court exceeded its statutory authority by imposing that portion of his agreed on sentence that banished him from New Haven County for forty-two months. Specifically, the respondent argues that the court, in accepting his plea agreement, exceeded its authority pursuant to General Statutes § 46b-140 (i)[1] in two ways.

---

[1] General Statutes § 46b-140 (i) provides: "If the delinquent act for which the child is committed to the Department of Children and Families is a serious juvenile offense, the court may set a minimum period of twelve months during which the child shall be placed in a residential facility operated by or under contract with said department, as determined by the Commissioner of Children and Families. The setting of such minimum period shall be in the form of an order of the court included in the mittimus. For good cause shown in the form of an affidavit annexed thereto, the Department of Children and Families, the parent or guardian of the child or the child may petition the court for modification of any such order."

First he claims that the court extended the maximum length of the sentence allowed under the statute from twelve months to forty-two months. He also contends that the court exceeded its statutory authority, which allows a court only to place a juvenile in a residential facility, by issuing an order of banishment from New Haven County. We dismiss the appeal as moot.

The respondent and three co-conspirators carjacked a woman at gunpoint, forced her into the trunk of her car and drove to a secluded area where two of the co-conspirators raped and beat her nearly to death. The co-conspirators who committed the sexual assault were each tried as adults, convicted and sentenced to eighty-five years incarceration. See *State* v. *Foreman*, 288 Conn. 684, 690, 954 A.2d 135 (2008); *State* v. *Sargeant*, 288 Conn. 673, 678, 954 A.2d 839 (2008). As a result of those incidents, the respondent was charged with kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, robbery in the first degree in violation of General Statutes § 53a-134, conspiracy to commit kidnapping in the first degree with a firearm in violation of General Statutes §§ 53a-92a and 53a-48, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134, sexual assault in the first degree in violation of General Statutes § 53a-70, assault in the first degree in violation of General Statutes § 53a-59, conspiracy to commit sexual assault in the first degree in violation of General Statutes §§ 53a-70 and 53a-48, and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59. Being only thirteen years old when the crime was committed, the respondent could not be tried as an adult. The state negotiated a plea agreement with the respondent in which he pleaded guilty under the *Alford* doctrine[2] to conspiracy to commit robbery in the first degree in violation of §§ 53a-48

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

and 53a-134, a serious juvenile offense as defined by General Statutes (Rev. to 2003) § 46b-120 (12). The record reveals that the banishment order was part of the voluntary plea agreement the state reached with the respondent. In oral argument to this court, the state claimed that the banishment order was meant to assure the victim that she could leave her apartment without inadvertently encountering the respondent.

On September 23, 2005, after the respondent had been convicted via the plea agreement as delinquent, he was committed, pursuant to an agreed on sentence, to the custody of the commissioner of children and families (commissioner) for a period not to exceed four years. Also, on that date, as part of the respondent's agreed on sentence, the court issued a separate order for three and one-half years of banishment from New Haven County. The banishment order was set to expire on March 23, 2009. The court, also as part of the agreed upon sentence, ordered the department of children and families (department) to keep apprised the victim, the victim's advocate and the state's attorney's office in Juvenile Court in New Haven of the respondent's location if he was to be outside of the training school's secured setting. The court noted that the state, in resolving the respondent's disposition and coming to an agreed on sentence that included the banishment order, took into consideration many factors including the victim's well-being and safety.[3] See General Statutes § 46b-140 (a) ("[i]n determining the appropriate disposition

---

[3] At the respondent's dispositional hearing held on September 23, 2005, the victim addressed the court. "My life has been forcibly changed since the night of September 26, 2003. . . . My clock has been stopped since that night. There is not a day that I don't think about what had happened to me that night. I'm often paralyzed by flashbacks. Everyday life reminds me of the attack. When I stop at [a] red light I get anxious because it reminds me of when I was screaming at—with guns pointed in my face. When I open the trunk, I remember the time that I was put in it, and I'm struck with the same feelings, thoughts and fears that I had the time I was in the trunk and asking for help to the police. . . . I remember how they tried to snap my

of a child convicted as delinquent, the court shall consider . . . [t]he seriousness of the offense, including the existence of any aggravating factors such as . . . the impact of the offense on any victim"). The respondent immediately was placed at the Connecticut Juvenile Training School; subsequently, however, he was released from the training school and placed in a residential treatment program in Pennsylvania. *Earl B.* v. *Commissioner of Children & Families*, 288 Conn. 163, 167–69, 175, 952 A.2d 32 (2008).

On April 2, 2008, the commissioner filed with the court a motion for review of the department's permanency plan for the respondent.[4] The department's plan called for the continuation of the respondent's commitment as a serious juvenile offender and for reunification with his mother. At that time, the respondent's mother was residing in Meriden with her brother, the respondent's uncle.[5] Another aspect of the permanency plan was for the respondent to earn community passes in order for him to visit his uncle's home in Meriden. In his report that was filed with the motion, the department social worker estimated that the respondent would earn his first community pass some time in July, 2008. On May 7, 2008, the court held a permanency plan hearing. Present at the hearing were attorneys Jessica Gauvin, representing the department, James Jude Connolly, the respondent's attorney, and juvenile prosecutor Vincent Duva, representing the state. During the

neck and the feeling of a rock being smashed against my head repeatedly even after I pretended to be dead."

[4] General Statutes § 17a-15 provides in relevant part: "(a) The commissioner shall prepare and maintain a written plan for care, treatment and permanent placement of every child and youth under the commissioner's supervision . . . .

"(b) The commissioner shall at least every six months, review the plan of each child and youth under the commissioner's supervision for the purpose of determining whether such plan is appropriate and make any appropriate modifications to such plan."

[5] Meriden is located in New Haven County.

hearing, Connolly orally moved for the banishment order to be modified to allow the respondent to "return to Meriden and that [would be] the only town or city in New Haven County [in which] he would be allowed." The court granted the motion to modify the banishment order to allow the respondent to reside in Meriden, with his mother and uncle, and stated that was "the only location within New Haven County that he will be able to reside in that will not result in a violation of the banishment order." The court then found that the department made reasonable efforts at reunification and approved the plan.

On May 9, 2008, the state[6] filed with the court a motion for reconsideration and immediate rehearing. On May 19, 2008, the respondent filed a motion to dismiss the state's motion for lack of subject matter jurisdiction. The court held a hearing on May 20, 2008, in order to consider the motions, at the conclusion of which the court continued the hearing to allow for additional briefing and stayed its May 7, 2008 order modifying the banishment order. On June 20, 2008, the respondent filed a motion to correct an illegal sentence. On July 8, 2008, the parties concluded their arguments concerning all matters involving the various motions before the court. By memorandum of decision filed November 6, 2008, the court dismissed the state's motion for reconsideration, reasoning that once a child who has been adjudicated delinquent has been committed to the department, the state, in its role as juvenile prosecutor, no longer is a party to subsequent proceedings involving that child's commitment. The court also denied the respondent's motion to correct an illegal sentence, concluding that both the commitment and the banishment order each were within the bounds of § 46b-140 (i).

---

[6] The motion provided that it was made by the state "acting through the [j]uvenile [p]rosecutor."

On appeal, the respondent challenges the propriety of the forty-two month banishment order. Because the banishment order expired on March 23, 2009, the parties each concede that the respondent's appeal is moot.[7] We agree, however, that this does not end our analysis because an otherwise moot question may qualify for review under the "capable of repetition, yet evading review" exception to the mootness doctrine. To qualify for review under that exception, an otherwise moot question must meet the three requirements set out in *Loisel* v. *Rowe*, 233 Conn. 370, 660 A.2d 323 (1995). "First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." Id., 382–83.

"The first element in the analysis pertains to the length of the challenged action. . . . The basis for this

---

[7] "Mootness implicates a court's subject matter jurisdiction and, therefore, presents a question of law over which we exercise plenary review. . . . For a case to be justiciable, it is required, among other things, that there be an actual controversy between or among the parties to the dispute . . . . [T]he requirement of an actual controversy . . . is premised upon the notion that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . . Moreover, [a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *State* v. *Mapp*, 118 Conn. App. 470, 475, 984 A.2d 108 (2009), cert. denied, 295 Conn. 903, 988 A.2d 879 (2010).

element derives from the nature of the exception. If an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced." (Citations omitted.) Id., 383–84. "[A] party typically satisfies this prong if there exists a 'functionally insurmountable time [constraint]' "; *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 367, 957 A.2d 821 (2008); or "the challenged action had an intrinsically limited lifespan." *Loisel* v. *Rowe*, supra, 233 Conn. 383.

Because the limits of a Juvenile Court's authority are fixed by statute; see *Dart* v. *Mecum*, 19 Conn. Sup. 428, 432, 116 A.2d 668 (1955); in addressing this first element of the *Loisel* test, we will examine applicable statutes governing the sentencing of juveniles in the circumstances present here. Cf. *State* v. *Boyle*, 287 Conn. 478, 487 n.3, 949 A.2d 460 (2008) (examination undertaken of statutes governing probationary periods in determining if action or effects not of inherently limited duration). The respondent was convicted of conspiracy to commit robbery in the first degree, a serious juvenile offense as defined by General Statutes (Rev. to 2003) § 46b-120 (12). Pursuant to General Statutes § 46b-141 (a) (2), the maximum commitment for a serious juvenile offense is four years. Also, pursuant to § 46b-140 (i), when a child is convicted of a serious juvenile offense "the court may set a minimum period of twelve months during which the child shall be placed in a residential facility operated by or under contract with said department . . . ." General Statutes § 46b-140 (i). Therefore, the plain language of the applicable statutes governing sentencing of serious juvenile offenders provides the court a window for the disposition of such a juvenile of between twelve months and four years.

The respondent's banishment order was for forty-two months. Although, after our research, we find no express statutory provision authorizing the banishment of a child convicted of a serious juvenile offense, the duration of the order was within the statutory confines established for a child convicted of a serious juvenile offense. Because a child convicted as a serious juvenile offender may face a sentence that varies in length from twelve months to four years, we cannot conclude that banishment orders of the type present here, by their very nature, are "of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about [their] validity will become moot before appellate litigation can be concluded." (Internal quotation marks omitted.) *State* v. *Boyle,* supra, 287 Conn. 487 n.3; cf. *Patterson* v. *Commissioner of Correction,* 112 Conn. App. 826, 836, 964 A.2d 1234 (2009) (because defendant may face probationary period that varies from two years to great number of years, probationary periods not of limited duration); *Ruffin* v. *Commissioner of Correction,* 89 Conn. App. 724, 728, 874 A.2d 857 (2005) (because issue of presentence time calculation could have been raised by inmates with lengthier prison terms, issue not likely to evade review).[8]

The dissent, citing *Earl B.* v. *Commissioner of Children & Families,* supra, 288 Conn. 163, concludes that

---

[8] The respondent argues that the court exceeded its statutory authority in issuing the order of banishment. He argues that a banishment from a geographical location is beyond the power of a court when setting "a minimum period of twelve months during which the child shall be placed in a residential facility operated by or under contract with said department . . . ." General Statutes § 46b-140 (i). Moreover, he contends that this circumstance must be considered in analyzing the first element of the *Loisel* test. We disagree. Whether the court exceeded its statutory authority in issuing the banishment order in that it restricted the respondent from New Haven County has no bearing on the determination of whether "there exists a 'functionally insurmountable time [constraint]' "; *Dutkiewicz* v. *Dutkiewicz,* supra, 289 Conn. 367; or "the challenged action had an intrinsically limited lifespan." *Loisel* v. *Rowe,* supra, 233 Conn. 383.

"[o]ur Supreme Court has suggested . . . that appeals from delinquency placement determinations are likely to evade review because they are inherently time limited." We, however, find the exceptions to mootness previously recognized by our Supreme Court in juvenile delinquency cases inapplicable to the present case. In *Earl B.*, the plaintiff, who is the respondent in the present case, sought a hearing to challenge a condition of his commitment, namely, his placement at a juvenile training school for high risk offenders. The placement was required to be reviewed and subject to modification every six months. See General Statutes § 17a-15 (b). Although his claim had become moot,[9] our Supreme Court held that it was nevertheless reviewable as capable of repetition yet evading review. *Earl B.* v. *Commissioner of Children & Families*, supra, 172. The court noted that most cases addressing the issue of whether a juvenile committed to the custody of the commissioner may challenge his or her continued placement through a treatment plan hearing would become moot before appellate litigation could be concluded because § 17a-15 (b) requires the commissioner every six months to review the treatment plan of each child committed to the commissioner's custody, and there is a strong likelihood that, as a result of the review, the department would change the juvenile's placement during the pendency of the appeal. Id., 170–71.

The same reasoning does not apply to the present case. The banishment order was not a condition of the respondent's four year commitment to the commissioner. It also was not a component of the treatment plan devised by the commissioner pursuant to § 17a-15 (a) or subject to review and modification every six

---

[9] After the appeal was filed in *Earl B.*, the department released him from the training school and transferred him to a residential treatment program in Pennsylvania. *Earl B.* v. *Commissioner of Children & Families*, supra, 288 Conn. 169.

months under § 17a-15 (b). It was a separate order entered by the court pursuant to the parties' agreement during the respondent's delinquency adjudication. As such, it was subject to challenge on direct appeal or pursuant to Practice Book § 43-22.[10] See *State* v. *Casiano*, 282 Conn. 614, 625, 922 A.2d 1065 (2007). The respondent, however, failed to avail himself of the opportunity for prompt review; he did not bring a direct appeal or prompt challenge to the order. His claim became moot because of his delay,[11] not because the banishment order was "by its very nature" limited in duration; *In re Steven M.*, 264 Conn. 747, 755, 826 A.2d 156 (2003); or presented a " 'functionally insurmountable time [constraint].' "[12] *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 362. Accordingly, we conclude that the respondent's claim does not satisfy the first prong of the *Loisel* test.[13]

---

[10] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[11] We note that had the respondent challenged the validity of his banishment at the same time he challenged the conditions of his commitment; see *Earl B.* v. *Commissioner of Children & Families*, supra, 288 Conn. 163; his claim would likely not have become moot because *Earl B.* was decided on July 29, 2008, eight months before the banishment order expired.

[12] Additionally, the forty-two month banishment order at issue in this case was more than twice as long as the eighteen month commitments in *In re William D.*, 284 Conn. 305, 308, 933 A.2d 1147 (2007), and *In re Steven M.*, supra, 264 Conn. 752. Further, the appeals in those cases became moot because the respondents in those cases became eighteen years of age during the pendency of their appeals and, as a result, were no longer subject to the jurisdiction of the department. See *In re William D.*, supra, 309 n.5; *In re Steven M.*, supra, 754. In contrast, the respondent in this case became eighteen years of age before filing his appeal; neither party argues that the enforcement of the banishment order was affected by his attaining the age of majority.

[13] Although under the *Loisel* test an individual must meet each prong to satisfy its requirements, given the unique facts and circumstances of this case, we address the dissent's analysis of the second prong of the test in its determination that the banishment order here was capable of repetition yet evades review. That prong requires that "there must be a reasonable likelihood that the question presented in the pending case will arise again

The respondent has failed to satisfy the first prong of *Loisel*, and, therefore, his claim does not qualify for review under the "capable of repetition, yet evading review" exception, as it is unable to meet each of *Loisel*'s three requirements. Because we cannot afford

in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate." *Loisel* v. *Rowe*, supra, 233 Conn. 382. "This analysis entails two separate inquiries: (1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation." Id., 384.

The dissent bases the conclusion that the order meets the first requirement under the second prong "not by reference to any anecdotal evidence of a raft of cases in which banishment orders have been issued, but rather on the apparent maintenance by the judicial branch of an outdated form which appears to contemplate the issuance of such an order." That form, JD-JM-16 Rev. 9-2002, indicates that a child may be "[p]laced out of said child's . . . town of residence" for a period of time. Initially, we note that nowhere on the form does it state that such placement requires the *exclusion* of the child from his or her town of residence for the duration of the placement. Banishment, by its very nature, contemplates the exclusion of the individual banished from an area for a specified time period, as evidenced by the order in this case. See Black's Law Dictionary (6th Ed. 1990) ("Banishment. A punishment inflicted upon criminals, by compelling them to leave a country for a specified period of time, or for life.").

Moreover, the dissent's assertion that the "continuing use of this outdated form provides an adequate basis for [it] to conclude that there is a reasonable likelihood that the legal efficacy of banishment orders in juvenile delinquency matters will likely arise in the future," is undermined by the dearth of such juvenile cases both cited to by the dissent and found in our research. The dissent cites only to the docket from one unnamed case in which a trial judge issued a banishment order, as well as an unpublished trial court opinion from 1999 in which the court was confronted with a banishment order. The latter case concerned an adult habeas trial that involved a condition of probation that the respondent leave Connecticut and never return. "*Loisel* does not provide an exception to the mootness doctrine when it is merely possible that an issue could recur, but states instead that 'there must be a reasonable likelihood that the question presented in the pending case will arise again in the future' . . . ." (Citation omitted.) *Carmona* v. *Commissioner of Correction*, 110 Conn. App. 194, 199, 954 A.2d 265 (2008). We conclude that the trial court's use of JD-JM-16 Rev. 9-2002, that form's continued use by our courts and the cases cited by the dissent fail to establish a reasonable likelihood that a banishment order such as the one at issue here will arise again in the future. Therefore, the second prong of *Loisel* is not met.

the respondent any practical relief and the respondent has failed to establish an exception to the mootness doctrine, we must dismiss the case for lack of subject matter jurisdiction.

The appeal is dismissed.

In this opinion ALVORD, J., concurred.

BISHOP, J., dissenting. Although I agree with the majority that this appeal is moot, I disagree with the majority's conclusion that the issues raised by the respondent, Earl B., on appeal are not likely to evade future review. Contrary to the majority, I believe that the issues are likely to evade review. I also believe that the issues are capable of repetition, that the respondent is an appropriate surrogate for similarly situated serious juvenile offenders and that the issue before us involves a matter of significant public importance. Therefore, in spite of the mootness of the appeal, I would reach the underlying substantive issue of whether the court improperly denied the respondent's motion to correct an illegal sentence. In light of the statutory scheme for serious juvenile offenders, I would reject the respondent's claim regarding the length of residential treatment ordered by the court. Based on my review of the statutory scheme pertaining to serious juvenile offenders, however, I do not believe that the court had the authority to issue a freestanding banishment order, excluding the respondent from New Haven County. Accordingly, I would reverse the court's decision denying the respondent's motion to correct an illegal sentence as to its banishment order and remand this matter with direction to grant the motion vacating the unauthorized banishment order.

The record in this matter reveals that the date of birth of the respondent is July 21, 1990, that the offense underlying his guilty plea took place on September 26,

2003, and that, pursuant to a plea agreement, the respondent was committed on September 23, 2005, to the custody of the department of children and families (department) for a period not to exceed four years. At the dispositional hearing, the court also issued an order excluding the respondent from New Haven County for a period of forty-two months. This record shows, therefore, that the respondent was approximately thirteen years and two months of age on the date of the offense and approximately fifteen years and two months of age on the date of disposition. As a consequence of the respondent's being under the age of fourteen on the date of the offense, and in spite of its extraordinary seriousness, he was not eligible for transfer to the regular criminal docket pursuant to General Statutes § 46b-127.

The statutory scheme applicable to juvenile matters is set forth in chapter 815t of the General Statutes. The respondent fit the definition of a serious juvenile offender as set forth in General Statutes § 46b-120 because the underlying offense resulting in his plea, conspiracy to commit robbery in the first degree, is a class B felony. The sentencing parameters for delinquents, including serious juvenile offenders, is set forth in General Statutes §§ 46b-140 and 46b-141. Section 46b-140 provides in relevant part: "(f) If the court further finds that its probation services or other services available to the court are not adequate for such child, the court shall commit such child to the Department of Children and Families in accordance with the provisions of section 46b-141. . . ." This statute continues: "(i) If the delinquent act for which the child is committed to the Department of Children and Families is a serious juvenile offense, the court may set a minimum period of twelve months during which the child shall be placed in a residential facility operated by or under contract with said department, as determined by the

Commissioner of Children and Families. The setting of such minimum period shall be in the form of an order of the court included in the mittimus. . . ." General Statutes § 46b-140 (i). Section 46b-140 (j) (2) also includes a provision regarding the placement of juvenile offenders determined by the department to be the highest risk at the Connecticut Juvenile Training School, a secure facility.[1]

In the case of a child committed to the department, as in this instance, there are additional statutory requirements regarding the length of commitment and the requirement for periodic reviews by the court. Section 46b-141 (a) provides, in relevant part, that commitment of a serious juvenile offender to the department may be for a period "up to a maximum of four years at the discretion of the court, unless extended as hereinafter provided." This statute further provides in relevant part: "The court shall hold a permanency hearing in accordance with subsection (d) of this section for each child convicted as delinquent for a serious juvenile offense . . . within twelve months of commitment to the Department of Children and Families and every twelve months thereafter if the child remains committed to the Department of Children and Families. Such hearing may include the submission of a motion to the court by the commissioner to either (1) modify such commitment, or (2) extend the commitment beyond

---

[1] Nowhere in § 46b-140 do I find authorization for the court to enter a freestanding order of banishment. Therefore, even if such an order was part of a plea agreement, it would constitute an illegal sentence if the court had no authority to issue that order just the same as if a court had sentenced a person to a period of time beyond the maximum prescribed by statute.

Although the court has the authority, pursuant to § 46b-140 (b) to place the child on probation and to establish conditions of probation, the respondent, in this instance, was committed to the department as an alternative to probation. Thus, we are not confronted in this instance with the question of whether banishment can be imposed as a reasonable condition of probation.

such four-year period on the grounds that such extension is for the best interest of the child or the community. . . ." General Statutes § 46b-141 (c).

With the exception of the banishment order, the court and the department appear to have followed this statutory scheme in sentencing the respondent and in his subsequent course while committed to the department. Rather than placing the respondent on probation, the court committed the respondent to the department. The record reveals, as well, that the department initially placed the respondent at the Connecticut Juvenile Training Center, and, thereafter, he was transferred to a residential juvenile facility in Pennsylvania. At a permanency plan hearing on May 7, 2008, when the respondent was approximately seventeen years and ten months of age and pursuant to § 46b-141, the department recommended that the respondent be permitted to visit his uncle's home in Meriden, which is located within New Haven County. Incident to this hearing, the court granted the respondent's motion to modify the banishment order. Thereafter, however, the state's attorney's office filed a motion for reconsideration in which it argued that the court could not modify the original disposition without providing the state and the victim notice and an opportunity to be heard. Within the same time period, the respondent filed a motion to dismiss the state's motion on the basis of standing, and the respondent moved to correct an illegal sentence in which he alleged that the court's original banishment order exceeded the court's statutory authority. In response, the court by memorandum of decision filed November 6, 2008, granted the respondent's motion to dismiss on the ground that the state had no standing during a permanency plan hearing, but the court also denied the respondent's motion to correct an illegal sentence.[2]

---

[2] The respondent became eighteen years of age on July 21, 2008. As a consequence, he was no longer in the custody of the department on the

Recognizing that the appeal has become moot because the respondent is no longer burdened by the banishment order, my colleagues dismiss this appeal on the ground that the issue of the authority of a juvenile sentencing court to issue a banishment order is not likely to evade review. As the majority has stated, in order for a moot question to survive dismissal, the challenged action or its effect must, by its nature, "be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded." *Loisel* v. *Rowe*, 233 Conn. 370, 382, 660 A.2d 323 (1995). Additionally, there must be a "reasonable likelihood" that the issue will arise again in the future and that it will either affect the same appellant or a reasonably identifiable group for whom the complainant can be said to act as a surrogate. Id. Finally, the question must be of some public importance. Id.

Taking the *Loisel* requirements in reverse order, the last is the easiest to resolve, as our Supreme Court has stated that issues that implicate the rights of juveniles adjudicated as delinquent are of public importance. *Earl B.* v. *Commissioner of Children & Families*, 288 Conn. 163, 172, 952 A.2d 32 (2008).[3] That the respondent may serve as a surrogate for all similarly situated serious juvenile offenders does not appear to be a subject of debate. I believe that the next prong is also satisfied; that is, there is a reasonable likelihood that the authority of the court to issue a freestanding banishment order in a delinquency matter is likely to reoccur. I base that conclusion not by reference to any anecdotal evidence

---

date of the court's November 6, 2008 orders. Additionally, the forty-two month banishment order expired, by its own terms, on March 23, 2009, while this appeal was pending.

[3] I note that *Earl B.* v. *Commissioner of Children & Families*, supra, 288 Conn. 163, involves the same juvenile offender as the case at hand, but raises different claims on appeal.

of a raft of cases in which banishment orders have been issued but, rather, on the apparent maintenance by the judicial branch of an outdated form which appears to contemplate the issuance of such an order.[4] A review of the record reveals that the form utilized by the court on the date of sentencing, September 23, 2005, contains a series of boxes to be checked in order to reflect the disposition of the case. One of the boxes is followed by the following form-typed language: "Placed out of said child's/youth's town of residence for ___ months effective on (date) ___ and shall expire no later than (date): ___." In this instance, the box was checked and the blank spaces were filled out to reflect that the respondent was "[p]laced out of said child's/youth's town of residence [New Haven County] for 42 months effective on . . . 9/23/05 and shall expire no later than . . . 3/23/09." The manner in which this portion of the form was completed comports precisely with the court's express order of banishment as reflected in the transcript of the sentencing procedure. The judicial branch's continuing use of this outdated form provides an adequate basis for me to conclude that there is a reasonable likelihood that the legal efficacy of banishment orders in juvenile delinquency matters will likely arise in the future.

Whether the issue is likely to evade review is, I recognize, a closer question. It is on this basis that the majority dismisses the appeal. Our Supreme Court has

---

[4] While this appeal was pending, the state filed a motion to dismiss on the basis of mootness. In return, the respondent furnished this court with the docket from one case in which a trial judge issued a banishment order. Additionally, there is an unpublished opinion, dated August 25, 1999, in which the trial court was confronted with a banishment order. Although the efficacy of the banishment order was not an issue for adjudication in that matter, the court noted that such orders elsewhere had generally been found to be unconstitutional. *Burke* v. *Wezner*, Superior Court, judicial district of New Haven, Docket Nos. CV-98-0413665S, CV-98-0414260 (August 25, 1999) (25 Conn. L. Rptr. 313).

suggested, but not explicitly stated, that appeals from delinquency placement determinations are likely to evade review because they are inherently time limited. *Earl B.* v. *Commissioner of Children & Families,* supra, 288 Conn. 171. In *Earl B.,* which involved an appeal from a decision to require the plaintiff, who is the respondent in the present case, to remain at the training school for an additional period of two years, subject to periodic (six month) reviews, the court stated: "The issue raised in the present appeal is necessarily limited in its duration because there is a strong likelihood that the department will change the juvenile's placement during the pendency of the appeal. In fact, § 17a-15 (b) requires the department to review the treatment plan of each child committed to its custody every six months. Accordingly, the juvenile's placement will be reviewed and likely changed more quickly than the time in which all appeals can be resolved. Moreover, pursuant to General Statutes § 46b-141, commitment of children convicted as delinquent to the department shall be for a maximum of eighteen months, or when convicted for a serious juvenile offense, up to a maximum of four years. The effect of the placement as prescribed in the treatment plan is thus limited by its very nature, and therefore is of such a limited duration that a substantial majority of the cases in which such an order is entered will evade review." Id.

In the present case, the provision of the statute regarding the placement of serious juvenile offenders requires a permanency review within twelve months and every twelve months thereafter. See General Statutes § 46b-141 (c). Thus, even though the order at hand purported to be for a period of forty-two months, it was subject to judicial review at a permanency placement hearing within twelve months of commitment, a shorter

time interval than that found by the court in *Earl B.* to likely evade review.[5]

Having reached the conclusion that the court's order under scrutiny is capable of repetition, likely to evade review, involves significant issues of public policy and that the respondent is an apt surrogate for similarly situated individuals, I would assess the substance of the respondent's claims. There are two. The respondent claims that, at sentencing, the court improperly committed him to the Connecticut Juvenile Training Center for a period not to exceed four years, a term greater than allowed by statute. I do not agree. The pertinent statute provides in relevant part: "If the delinquent act for which the child is committed to the Department of Children and Families is a serious juvenile offense, the court may set a minimum period of twelve months during which the child shall be placed in a residential facility operated by or under contract with said department, as determined by the Commissioner of Children

---

[5] In this instance, the fact that the trial court came to the conclusion that it did not have the authority to modify the banishment order is not an aid to determining whether such an order, made at sentencing, is likely to evade review. Such an order, if of any legal vitality, would by necessity have to be part of the court's order of commitment because the court is limited by statute to either ordering certain services for a delinquent or committing the child to the department. See General Statutes § 46b-140 (f). The purpose of a permanency hearing is to determine whether the terms of a commitment to the department should be modified in the best interest of the child and the community. See General Statutes § 46b-141 (c). Our Supreme Court has opined that "the purpose of the comprehensive statutory treatment of 'juvenile delinquents' is clinical and rehabilitative, rather than retributive or punitive" and that "[t]he objective of juvenile court proceedings is to determin[e] the needs of the child and of society rather than adjudicat[e] criminal conduct." (Internal quotation marks omitted.). *In re Tyvonne M.,* 211 Conn. 151, 160, 558 A.2d 661 (1989). Although the heinous behavior giving rise to this respondent's commitment stretches taut the notion of rehabilitation and concerns for a child's interest, that is precisely the mandate that governs juvenile proceedings. It stands to reason, therefore, that at a permanency hearing for a child committed to the department, the court be in a position to modify all of the terms of a child's disposition so as to fairly meet the needs of society and the juvenile offender.

and Families. The setting of such minimum period shall be in the form of an order of the court included in the mittimus. . . ." General Statutes § 46b-140 (i).

The respondent argues that this statutory language limits the period of time a child may be committed to a residential facility to twelve months. His argument is supported neither by the language of the statute nor the statute's legislative history. As to the language, if the authorized time period is limited to twelve months, there would be no need for the term "minimum period" to be employed in the statute. Rather, the statute could simply give the court authority to commit a child to a period of twelve months. This view is bolstered by the legislative history, which reveals that, as part of revamping our juvenile justice system and creating a new residential facility in 1999, the General Assembly enacted this change in order to give the court the authority to set a minimum time of required residential treatment for serious juvenile offenders. Speaking in favor of the bill, one of its proponents, Representative Michael P. Lawlor, judiciary committee co-chairperson, commented: "And the point of the juvenile justice system in the first place is that these [kids'] lives are still salvageable. And if we're going to spend the extraordinary amount of money which we spend per kid per year in a facility like Long Lane [School in Middletown],[6] we should at least require them to be there long enough . . . to benefit from the treatment. And no one thought that the average stay—even currently which is like five months—is enough. So the bill, and this amendment requires the new Long Lane [School] to keep kids there for *at least* [twelve] months when the court that has sent them there has required it. Serious juvenile offenders for whom the court says you've got to keep this kid

---

[6] Long Lane School, which was closed in 2003, was a juvenile facility that was maintained by the department. See *In re Steven M.*, 68 Conn. App. 427, 429 n.4, 789 A.2d 1169 (2002), rev'd in part on other grounds, 264 Conn. 747, 826 A.2d 156 (2003).

at least a year in Long Lane [School], they'll have to do that." (Emphasis added.) 42 H.R. Proc., Pt. 6, 1999 Sess., pp. 1854–55. Given this legislative history and the language of the statute in question, I do not believe that the court's order that the respondent be placed in a residential facility for a period of time substantially in excess of twelve months violates the statutory prescription that any such placement be for a time period of *at least* twelve months.

The respondent also claims that the court's order of banishment from New Haven County was beyond the court's authority. I agree. Analysis of this claim requires a brief discussion of the antecedents to § 46b-140. Prior to October 1, 1995, § 46b-140 (e) (1), the predecessor to subsection (i), provided: "If the delinquent act for which the child is committed to the department of children and families is a serious juvenile offense, the court may set a period of time up to six months during which the department of children and families shall place such child out of his town of residence at the commencement of such child's commitment." General Statutes § 46b-140 (e) (1). Thus, the statute in effect prior to October 1, 1995, contemplated that a child could be excluded from his or her town of residence for a period up to six months following his or her commitment to the department. In 1995, the statute was amended; see Public Acts 1995, No. 95-225, § 22, effective October 1, 1995; to delete reference to six months with the result that, as of October 1, 1995, the statute gave to the court the authority to order that a child committed to the department be excluded from his or her community for an indefinite period of time, presumably up to the full term of the child's commitment.[7] In 1999, however,

---

[7] That is not to suggest, however, that if a child is placed on probation, the court is powerless to make an order of exclusion as a condition of probation. In doing so, however, a court should be mindful that banishment has historically been viewed as a form of punishment. "Banishment was a weapon in the English legal arsenal for centuries . . . but it was always adjudged a harsh punishment even by men who were accustomed to brutality

§ 46b-140 was repealed and reenacted by Public Acts 1999, No. 99-26, § 12. Since 1999, the court no longer has the authority to set a period of time for a child to be placed out of his town of residence by the department.[8] Rather, the statute, as applicable at the time of the underlying offense and sentencing, provides that the court may order that a serious juvenile offender committed to the department be placed in a residential facility for a minimum period of time of twelve months without regard to the offender's place of residence. In sum, by the enactment of Public Act 99-26, the General Assembly eliminated the court's authority to banish an offender from his or her hometown and substituted, instead, a provision granting the court the authority to require residential placement for a minimum period of twelve months. In entering an order for placement as well as for banishment, the court, in this instance, exceeded its statutory authority. For that reason, I would reverse the judgment of the court denying the respondent's motion to correct an illegal sentence and remand this matter to the trial court with direction to grant the motion to vacate the banishment provision. Accordingly, I respectfully dissent.

---

in the administration of criminal justice." (Citation omitted; internal quotation marks omitted.) *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168 n.23, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). In reviewing such an order, one court has observed: "Conditions of banishment affect the probationer's basic constitutional rights of freedom of travel, association and assembly. . . . Thus, in order to survive constitutional scrutiny, such conditions not only must be reasonably related to present or future criminality, but also must be narrowly drawn and specifically tailored to the individual probationer." (Citations omitted.) *In re Babak S.*, 18 Cal. App. 4th 1077, 1084, 22 Cal. Rptr. 2d 893 (1993), review denied, 1993 Cal. LEXIS 6522 (December 15, 1993). In this instance, because the respondent was not placed on probation, it is beyond the scope of this dissent to discuss what narrowly drawn and specifically tailored conditions of banishment would have been reasonable under these circumstances.

[8] Although the form utilized by the judicial branch purports to be current through 2002, it appears to me that the branch has not accommodated the form to the 1999 repeal and reenactment of § 46b-140.