******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE BRIAN C.[*]
# (AC 48939)

Suarez, Clark and Wilson, Js.

*Syllabus*

The respondent mother appealed from the trial court's judgment for the petitioner, the Commissioner of Children and Families, sustaining an ex parte order granting temporary custody of the respondent's minor child, B, to the petitioner and adjudicating B neglected. The respondent claimed, inter alia, that the trial court improperly admitted hearsay evidence at the hearing sustaining the order of temporary custody. *Held*:

This court dismissed the respondent mother's appeal as moot, as the trial court's order adjudicating B neglected and committing him to the custody of the petitioner superseded the order of temporary custody.

The respondent mother's claim that her challenge to the order of temporary custody remained eligible for review under the capable of repetition, yet evading review exception to the mootness doctrine failed under the first required criterion of that doctrine under *Loisel* v. *Rowe* (233 Conn. 370), namely, that the challenged action was of such limited duration that a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded, as she failed to pursue opportunities to challenge the order of temporary custody, including by failing to request a contested hearing or to pursue an appeal of the trial court's order sustaining the order of temporary custody prior to the adjudication of B as neglected.

Argued January 13—officially released May 6, 2026[**]

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of Middlesex, Juvenile Matters, where the court, *Dawson, J.*, issued an ex parte order of temporary custody vested in the petitioner; thereafter, the court, *Burgdorff, J.*, sustained the order of temporary custody without prejudice; subsequently, the court, *Lopez, J.*, granted

[*]In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

[**]May 6, 2026, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

the petitioner's request to consolidate the contested motion for an order of temporary custody and the neglect petition and overruled the respondent mother's objection to the motion to consolidate; thereafter, the case was tried to the court, *Esperance-Smith, J.*; judgment denying the respondent mother's motion to vacate the order of temporary custody, adjudicating the minor child neglected and committing the child to the custody of the petitioner, from which the respondent mother appealed to this court. *Appeal dismissed*.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent mother).

*Rosemarie T. Weber*, deputy associate attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa J. Khan*, assistant attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent mother, Farrah D., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, sustaining an ex parte order granting temporary custody of her minor child, Brian C. (Brian), to the petitioner, and adjudicating Brian neglected.[1] On appeal, the respondent claims that the court improperly (1) sustained the order of temporary custody and denied her motion to vacate the order and (2) admitted hearsay evidence at the hearing sustaining the order of temporary custody and in denying her motion to vacate. We dismiss the appeal as moot.

The following facts, as found by the trial court, and procedural history, are necessary for the resolution of

[1] Brian's biological father was named as a respondent in the proceedings before the trial court, but neither he nor his attorney appeared or participated in the trial proceedings. Prior to the start of trial, counsel for the respondent father informed the court by letter that the respondent father was "not interested in participating or being present for the trial or any future court matters." The respondent father is not a party to this appeal. We therefore refer in this opinion to the respondent mother as the respondent.

this appeal. On March 9, 2024, the respondent, a resident of New York, went to MidState Medical Center (MidState) and reported that she had been sexually assaulted while staying at a hotel in Connecticut. Upon arrival at MidState, the respondent presented as "confused, delusional and paranoid." Due to questions about the respondent's mental health, medical professionals at MidState placed the respondent on a forty-eight hour psychiatric hold.

While the respondent was being examined, Brian, his maternal grandmother, and their dog remained in the waiting area. Brian, who has special needs and is nonverbal, was crouched in a fetal position in a "kid cart."[2] The hospital staff observed the maternal grandmother strike Brian and, upon questioning, the staff found that the maternal grandmother was confused, unaware of why she was at the hospital, and unable to answer basic questions. Because it was apparent that the maternal grandmother could not care for Brian, medical professionals at MidState made a referral to the Department of Children and Families (department).

The department recommended that Brian be evaluated, and he was taken to Connecticut Children's Medical Center for an assessment. According to the trial court, "[u]pon evaluation, it was discovered that Brian has a shunt tube inside of his brain that drains excess fluid, has a G-tube that goes through his abdomen to provide nutrition for him, has hip dysplasia, does not have full movement and range of his right arm, and has limited mobility in his legs. As a result of his examination, Brian was determined to be medically complex and in need of twenty-four hour care." On March 9, 2024, the same day that the respondent was hospitalized as a result of a psychiatric hold, the department invoked a ninety-six hour hold on behalf of Brian.

The court found that "[t]he respondent . . . was released from the hospital on March 10, 2024, after it

---

[2] The trial court explained that a "kid cart" is a specialized stroller for Brian's medical needs, described as a cross between a wagon and a wheelchair.

was determined that she was not a danger to herself or others. Upon her release, the respondent . . . returned to New York with the maternal grandmother and the dog. She informed [the department] that she would return to retrieve Brian on March 11, 2024. [The department] also requested that she provide [it] with Brian's specialized stroller upon her return. However, the respondent . . . did not return to Connecticut to retrieve Brian or provide [the department] with an appropriate stroller for his transportation. She did explain the medications Brian was taking and when to administer them."

On March 12, 2024, the petitioner filed an ex parte motion for an order of temporary custody and a petition for neglect. On March 12, 2024, the court, *Dawson, J.*, issued an ex parte order of temporary custody, finding reasonable cause to believe that Brian was in immediate physical danger from his surroundings, that his immediate removal from such surroundings was necessary to ensure his safety, that his continuation in the home was contrary to his welfare, and that the department had made reasonable efforts to prevent or eliminate the need for removal.

The court, *Burgdorff, J.*, held a preliminary hearing on the order of temporary custody on March 22, 2024. The respondent was not present for this hearing. The court appointed counsel for the respondent and scheduled an initial plea hearing on the neglect petition to take place on April 18, 2024.[3] Following the preliminary hearing, the court sustained the order of temporary custody "without prejudice." Thereafter, the respondent appeared virtually at a hearing on April 18, 2024, and entered a pro

---

[3] In its decision, the court indicated that, at the March 22, 2024 hearing, the court confirmed service had been made on the respondent. The record reflects, however, that proof of service was not established at the March 22, 2024 hearing and that the issue of service was to be addressed at the hearing on April 18, 2024.

The record further reflects that Attorney Channa Gordon was present at the March 22, 2024 hearing and that the trial court appointed Attorney Gordon to represent the respondent. Attorney Gordon filed an appearance for the respondent on March 25, 2024.

forma denial to the neglect petition. On May 28, 2024, the respondent filed a motion to vacate the March 22, 2024 order of temporary custody. On May 30, 2024, the court, *Lopez, J.,* granted the petitioner's request to consolidate the contested motion for an order of temporary custody and the pending neglect petition and overruled the respondent's objection to the motion to consolidate.[4]

The court conducted a trial on the matter on January 21, and February 11 and 26, 2025. On June 3, 2025, the court, *Esperance-Smith, J.*, denied the respondent's motion to vacate the order of temporary custody that had been sustained "without prejudice" on March 22, 2024. The same day, the court issued a memorandum of decision sustaining the order of temporary custody pursuant to General Statutes § 46b-129 (b),[5] finding that

[4] The court granted the petitioner's request for a consolidated hearing pursuant to Practice Book § 33a-7 (e), which provides: "Subject to the requirements of Section 33a-7 (a) (6), upon motion of any party or on its own motion, the judicial authority may consolidate the hearing, on the order of temporary custody or order to appear with the adjudicatory phase of the trial on the underlying neglect or uncared for petition. At a consolidated order of temporary custody and neglect or uncared for adjudication hearing, the judicial authority shall determine the outcome of the order of temporary custody based upon whether or not continued removal is necessary to ensure the child's or youth's safety, irrespective of its finding on whether there is sufficient evidence to support an adjudication of neglect or uncared for. Nothing in this subsection prohibits the judicial authority from proceeding to disposition of the underlying petition immediately after such consolidation hearing if the social study has been filed and the parties had previously agreed to sustain the order of temporary custody and waived the ten day hearing or the parties should reasonably be ready to proceed."

[5] General Statutes § 46b-129 (b) provides in relevant part: "If it appears from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, or subsequent thereto, that there is reasonable cause to believe that (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety, the court shall either (A) issue an order to the parents or other person having responsibility for the care of the child or youth to appear at such time as the court may designate to determine whether the court should vest the child's or

the petitioner "[had] proven by a fair preponderance of the evidence that, if Brian were to return to [the respondent's] care, he would be in immediate physical danger and that continued removal was necessary to ensure his safety and well-being." In its decision, the court explained that "[t]he continuation of Brian in [the respondent's] care and custody is contrary to his safety, well-being, and best interest in light of his medical needs and lack of visibility in the community. While the [respondent] appears to love Brian and desires to be reunited with him, she is not a suitable caretaker at this time." The court next found that "it is more likely than not that Brian would be neglected if he remained in the care of the [respondent], in that he would be permitted to live under conditions injurious to his well-being." The court found that the petitioner had proven, by a preponderance of the evidence, predictive neglect and actual neglect. Accordingly, the court adjudicated Brian neglected and committed him to the care and custody of the petitioner. This appeal, which challenges only the court's judgment sustaining the order of temporary custody and denying the respondent's motion to vacate the order of temporary custody, followed.[6]

On appeal, the respondent claims that the court improperly sustained the order of temporary custody

youth's temporary care and custody in a person related to the child or youth by blood or marriage or in some other person or suitable agency pending disposition of the petition, or (B) issue an order ex parte vesting the child's or youth's temporary care and custody in a person related to the child or youth by blood or marriage or in some other person or suitable agency. A preliminary hearing on any ex parte custody order or order to appear issued by the court shall be held not later than ten days after the issuance of such order. . . ."

[6] In her appeal form filed on July 14, 2025, the respondent indicated that she was appealing from the court's decision sustaining the order of temporary custody and the court's adjudication of Brian as neglected. In her brief, however, the respondent does not assert a claim regarding the court's adjudication of Brian as neglected. During oral argument before this court, counsel for the respondent was asked why the respondent did not challenge the court's neglect adjudication. Counsel answered that the respondent lacked grounds for an appeal of the court's finding of neglect.

and improperly denied her motion to vacate. The respondent also claims that the court improperly admitted hearsay evidence in sustaining the order of temporary custody and denying her motion to vacate. In response, the petitioner asserts that the respondent's appeal is moot because the court's order adjudicating Brian neglected and committing him to the custody of the petitioner supersedes the order of temporary custody.[7] We agree with the petitioner that the respondent's appeal is moot.[8]

"Because mootness goes to the power of this court to entertain an appeal, we address the issue as a threshold matter." (Internal quotation marks omitted.) *In re P. M.*, 226 Conn. App. 378, 386, 318 A.3d 1085, cert. denied, 349 Conn. 919, 320 A.3d 978 (2024). Because mootness implicates subject matter jurisdiction and raises a question of law, our review is plenary. Id.

Mootness "imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . [It] presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Pryor* v. *Pryor*, 162 Conn. App. 451, 455, 133 A.3d 463 (2016). "In determining mootness, the dispositive question is whether a successful appeal would benefit . . . [the] [respondent] in any way. . . . In other words, the ultimate question is whether the determination of the controversy will result in practical relief to the

---

[7] On October 16, 2025, pursuant to Practice Book § 67-13, counsel for the minor child filed with this court a statement adopting the brief submitted by the petitioner.

[8] In light of this conclusion, it is unnecessary for us to consider the merits of either claim raised by the respondent in this appeal.

complainant." (Internal quotation marks omitted.) *In re Julie J.*, 150 Conn. App. 387, 392, 90 A.3d 406 (2014).

"Our case law specifically conceives of appeals from temporary custody orders as moot when the [child] involved [is] adjudicated neglected." *In re Forrest B.*, 109 Conn. App. 772, 776, 953 A.2d 887 (2008); see id. (dismissing as moot respondent mother's appeal of judgment sustaining orders of temporary custody when children at issue had subsequently been adjudicated neglected and committed to custody of petitioner); see also *In re Loyal H.*, 238 Conn. App. 129, 130–31 n.2,      A.3d      (2026) (noting that respondent's challenge to trial court's orders granting temporary custody of his four children to petitioner was dismissed as moot when, during pendency of appeal, trial court committed two of respondent's children to custody of petitioner and his other two children to custody of their mother); *In re Carl O.*, 10 Conn. App. 428, 434, 523 A.2d 1339 (claimed errors in temporary custody proceedings are moot when child is adjudicated uncared for in later proceedings), cert. denied, 204 Conn. 802, 525 A.2d 964 (1987), and cert. denied, 204 Conn. 802, 525 A.2d 964 (1987).

The respondent acknowledges that an appeal from an order of temporary custody becomes moot when the trial court adjudicates and disposes of the underlying neglect petition. The respondent, however, argues that her challenge to the order of temporary custody remains eligible for review under the capable of repetition, yet evading review exception to the mootness doctrine. For an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception to the mootness doctrine, it must satisfy three requirements as set forth by our Supreme Court in *Loisel* v. *Rowe*, 233 Conn. 370, 382, 660 A.2d 323 (1995). "First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded.

Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." Id., 382–83. We disagree with the respondent that either of her claims satisfies the requirements for appellate review under this exception.

Like the respondent in the present case, the respondent in *In re Forrest B.*, supra, 109 Conn. App. 775, argued that the orders of temporary custody remained eligible for review under the capable of repetition, yet evading review exception to the mootness doctrine. The respondent in *In re Forrest B.*, however, "offered no evidence that most cases challenging a temporary custody order are, by their very nature, of such a limited duration that there is a strong likelihood that they will become moot before appellate litigation can be concluded." Id., 776. The respondent, therefore, "fail[ed] to establish that the substantial majority of temporary custody orders evades review, [and, in failing to do so] foundered on the first required criterion of the [capable of repetition, yet evading review] exception [under *Loisel*]." Id.

In urging this court that her otherwise moot claims qualify for review under the capable of repetition yet evading review exception to the mootness doctrine, the respondent in the present case argues, in essence, that, in instances of a consolidated hearing, when an order of temporary custody is sustained and the child at issue is thereafter adjudicated neglected, respondents are effectively barred from an opportunity to challenge the court's custody order. Specifically, the respondent contends that, "[i]n cases where the [order of temporary custody] and neglect petitions are joined . . . there is no opportunity for the respondent to challenge the [order of temporary custody]. Joinder effectively removes the respondent's right to appeal an [order of temporary

custody] judgment." Additionally, she argues that "the Practice Book authorizes, indeed, almost ensures, that in consolidated cases the [order of temporary custody] is of such limited duration that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded."

The respondent cannot prevail on her claim, however, because she failed to avail herself of the opportunities available to challenge the order of temporary custody. Specifically, the record indicates that, on March 12, 2024, after the respondent failed to return to Connecticut to retrieve Brian, the petitioner filed an ex parte motion for an order of temporary custody and a petition of neglect. The same day, the court issued an ex parte order of temporary custody. The court, *Burgdorff, J.*, held a preliminary hearing on the order of temporary custody on March 22, 2024. The court appointed counsel for the respondent at the preliminary hearing, and Attorney Channa Gordon filed an appearance on the respondent's behalf on March 25, 2024. Following the preliminary hearing, the court sustained the order of temporary custody, "without prejudice."

The respondent thereafter failed to request a contested hearing within ten days as permitted by § 46b-129 (f). "Following the preliminary hearing on an ex parte order of temporary custody, [u]pon request, or upon its own motion, the court shall schedule a hearing on the order for temporary custody . . . to be held not later than ten days after the date of the preliminary hearing. General Statutes § 46b-129 (f)." *In re M. S.*, 226 Conn. App. 857, 863, 319 A.3d 833, cert. denied, 349 Conn. 920, 320 A.3d 978 (2024). The record further indicates that, although she was represented and participated remotely during the initial hearing on the neglect petition on April 18, 2024, she did not request a contested hearing at that time. During oral argument before this court, counsel for the

respondent conceded that the respondent did not request a contested hearing on the order of temporary custody.

Furthermore, although the respondent filed a motion to vacate the order of temporary custody on May 28, 2024, the respondent did not seek immediate appellate review of the order of temporary custody, although she had a right to do so. See *Madigan* v. *Madigan*, 224 Conn. 749, 757, 620 A.2d 1276 (1993) (concluding that "temporary custody orders are immediately appealable because an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected"). Finally, although the respondent objected to the petitioner's motion to consolidate the neglect petition and the order of temporary custody, she has not challenged the court's ruling granting the motion to consolidate on appeal.

In *In re Earl B.*, 121 Conn. App. 269, 275, 994 A.2d 713, cert. denied, 297 Conn. 921, 996 A.2d 1192 (2010), this court examined whether a respondent's then expired banishment order qualified for review under the " 'capable of repetition, yet evading review' " exception to the mootness doctrine. In determining that the respondent's appeal of the banishment order did not qualify for review under the exception, this court explained that, although the banishment order was subject to challenge on direct appeal, or by seeking a correction to an illegal sentence pursuant to Practice Book § 43-22, the respondent had "failed to avail himself of the opportunity for prompt review; he did not bring a direct appeal or prompt challenge to the order. His claim became moot because of his delay, not because the banishment order was by its very nature limited in duration . . . or presented a functionally insurmountable time [constraint]." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 278–79. Consistent with our conclusion in *In re Earl B.*, we similarly conclude that, by failing to request a contested hearing or to pursue an appeal of the court's order sustaining the order of temporary custody prior to Brian's adjudication as neglected, the

respondent in the present case failed to avail herself of the opportunities available to her to challenge the order of temporary custody. Under these circumstances, the respondent's claims became moot because of her own inaction and not because an order of temporary custody is, by its very nature, of an inherently limited duration or presents an otherwise functionally insurmountable time constraint.[9]

The appeal is dismissed.

---

[9] In this regard, we note that, although orders of temporary custody are temporary orders, they can vary in length and have been reviewed by this court in prior cases. See, e.g., *In re M. S.*, supra, 226 Conn. App. 859; *In re Kelsey M.*, 120 Conn. App. 537, 539, 992 A.2d 372 (2010); *In re Kaurice B.*, 83 Conn. App. 519, 521, 850 A.2d 223 (2004).